ABRAHAM NATOVITZ, complainant-respondent and appellant on cross-appeal,

*v.*

BAY HEAD REALTY CO., GUY R. LISTER and FLORENCE LIS-
TER, his wife, and MICHAEL H. LIEBMANN, defendants-
appellants, and BOROUGH OF POINT PLEASANT, defendant
and respondent on cross-appeal.

[Submitted February 13th, 1948.   Decided May 13th, 1948.]

*Messrs. Siegler & Siegler (Mr. Irving Siegler,* of counsel), for the defendants-appellants.

*Mr. Abraham Nalovitz, in propria persona,* for the complainant-respondent and appellant on cross-appeal.

*Messrs. Rogers & Sim (Mr. Richard W. Sim,* of counsel), for the defendant and respondent on cross-appeal, Borough of Point Pleasant.

The opinion of the court was delivered by

HEHER, J.

There are cross-appeals here. The challenged decree vacates, as in fraud of the complainant creditor of the grantor, two several deeds of conveyance of lands made by the defendant Bay Head Realty Co. to defendants Guy R. Lister and Florence Lister, his wife, and to defendant Michael H. Liebmann, and sustains, as supported by "good and valuable consideration," a third such deed made by the same grantor to the defendant Borough of Point Pleasant. . The deeds to the Listers and Liebmann were found to be "voluntary and without the support of an adequate valuable consideration and fraudulent" as to the complainant creditor, and made when the grantor was insolvent. The Listers and Liebmann appeal from the provisions of the decree setting aside their respective deeds of conveyance; and complainant appeals from the dismissal of the bill of complaint as to the Borough of Point Pleasant.

On January 12th, 1946, complainant recovered a judgment in the Supreme Court against the defendant Bay Head Realty Co. for $30,476.75, as the deficiency arising from the foreclosure in the Ocean Circuit Court of a mortgage made by that corporation to complainant's assignors in the principal sum of $20,000, covering a tract of land in Point Pleasant. The deed to the Listers bears date November 29th, 1945, and was recorded on the ensuing December 22d; the deed to Liebmann was dated December 27th, 1945, and was recorded the

following day; and the deed to the Borough of Point Pleasant was dated January 2d, 1946, and was recorded on January 10th following. Guy R. Lister was the principal stockholder of the grantor corporation, and at the time of these conveyances he was the secretary of the corporation and his brother Albert E. was the president, and as such they executed the conveyances on behalf of the corporation.

The amount due under the decree for sale entered in the foreclosure proceeding was $29,868.60, with interest, and taxed costs in the sum of $453.42. Pursuant to a writ of execution issued thereon, the sheriff sold the mortgaged lands at public vendue to complainant for $300; and the judgment at law is for the deficiency thus arising.

The insistence is that complainant purchased the mortgage later foreclosed for "a nominal consideration" and the mortgaged lands acquired by complainant in the foreclosure proceedings were "worth considerably in excess of the amount due on the mortgage and many times more than the paltry sum which complainant had apparently paid to acquire" the mortgage, and Chancery may intervene "in behalf of an aggrieved debtor, by refusing to allow a prayer for affirmative relief, in a case such as this, where the granting of such affirmative relief would result in the complainant's obtaining satisfaction of his debt two or three times, and thus pillage the estate of the mortgagor." The case of *Bourgeois* v. *Risley Real Estate Co., 82 N. J. Eq. 211,* is cited. But the principle of that case is not apposite here.

First, barring an overriding equity, the want of consideration for the assignment of a mortgage is generally not a defense open to one not a party to the assignment. The mortgagor cannot defeat foreclosure or reduce the *quantum* of his obligation by showing a want of consideration for the assignment, either total or partial. *Donnington* v. *Meeker, 11 N. J. Eq. 362.*

Second, the relationship between the maker of a bond and mortgage and the mortgagee, and their privies, is grounded in contract, as supplemented by *R. S. 2:65–1 et seq.;* and it is of the very essence of this relationship that the decree in foreclosure and the order confirming the sale of the mortgaged

lands made pursuant thereto are *res judicala* of the value of the lands thus sold and of the *quantum* of the deficiency upon the obligation for which the mortgage stood as security, except that in an action at law upon a bond so secured made subsequent to March 29th, 1933, credit is allowable for the fair market value of the mortgaged premises at the time of the sale thereof in the foreclosure proceeding, if the defendant shall file an answer disputing the amount of the deficiency and such value shall be proved by evidence or fixed by appraisers appointed by the parties. *R. S. 2:65–3.* The principle is embedded in our jurisprudence. It controls courts of equitable jurisdiction as well as courts of law.

This was the established rule in equity even before the adoption of chapter 170 of the laws of 1880 (*P. L., p. 255*), now *R. S. 2:65–1,* barring the entry of a personal deficiency decree in the foreclosure proceeding. The value fixed by the foreclosure sale was conclusive. It was the rule that in determining the amount of the decree for such personal deficiency, the sum for which the mortgaged premises were sold "must, so long as the sale stands, be taken, as between the parties to the suit, as a conclusive test" of their value. *Snyder* v. *Blair, 33 N. J. Eq. 208.* In that case it was said by Vice-Chancellor Van Fleet that, while this principle was implicit in the then existing Chancery Act (*Revision of 1877 p. 113 § 76*), empowering the Chancellor to enter a decree for a personal deficiency in the foreclosure proceeding, measured by the excess of the mortgage debt "above the net proceeds of sale," it had judicial sanction long prior to the adoption of any statute upon the subject and "must be considered so firmly settled as to be beyond alteration by the courts." Pointing out that "the pledge is sold" by the court's "authority and under its process," and the court therefore "is really the vendor," the Vice-Chancellor continued: "If the pledge is sold for a sum greater than is required to pay the liens to which it is subject, the surplus is paid to the pledgor; if for less than the amount due to the pledgee, it is the duty of the court, according to the well-established practice, to award him a decree for the deficiency. The price, however, realized at the sale, whether it be more or less than is required to pay

the pledgor's debt, is the only known legal standard of value. The court cannot sell the pledge to the pledgee for one price, and make title to him for that price, and then, in adjusting the amount remaining due to him from his debtor, compel him to pay a much larger price. If such a thing could be done, it would amount to this: the court would nullify the sale so far as it affected the interests of the vendor, but compel the vendee to keep his part of the bargain, and to pay for the property a price he never agreed or consented to give. This court has no such power. * * * It is also true that a creditor who holds a pledge as security for his debt cannot have both his debt and the pledge. If a mortgagee, after obtaining a decree of strict foreclosure and taking possession, proceeds to collect his debt, the decree of foreclosure is *ipso facto* opened, and the debtor let in to redeem. * * * But when the pledge is converted into money by judicial sale, even if the creditor is the purchaser, it is not true that he has both debt and pledge. In that case the pledge is sold to pay the debt; the debt is satisfied to the extent of the money realized, but no further; the interest of both pledgee and pledgor passes by the sale, and the purchaser stands in the right of a new title, founded upon the rights of both."

And in the case of *Bohde* v. *Lawless, 33 N. J. Eq. 412,* where the circumstances were akin to those of the case under review, Chancellor Runyon, applying the same principle, ruled that it was no objection to the enforcement of the complainant mortgagees' right to set aside a voluntary conveyance of lands, made to defeat their personal decree for a deficiency on a foreclosure in excess of $5,000, that the mortgaged premises were bought by the complainants at the foreclosure sale at much less than their actual value, where there was no showing of fraud or inequity on complainants' part. In setting aside the conveyance, the Chancellor declared: "On the hearing it was insisted that the fact that the complainants were the purchasers of the mortgaged premises at the sale under the foreclosure, for $500, while the property was and is worth a large sum beyond that amount (perhaps enough to cover the entire amount of the deficiency), is of itself enough to induce this court to refuse to aid the complainants in enforcing payment

of the deficiency. But it is quite evident that that consideration cannot avail the defendants. The complainants are before the court seeking payment of a lawful demand, and they have been guilty of no fraudulent or inequitable conduct to debar them from the aid of equity."

The current statute modifies but does not annul this basic principle. It provides that no decree for a personal deficiency shall be rendered in the foreclosure proceeding; and that where both a bond and mortgage have been given for the same debt, there shall be, first, a foreclosure of the mortgage, and, second, an action on the bond for .the deficiency, "if, at the sale in foreclosure proceeding, the mortgaged premises do not bring an amount sufficient to satisfy the debt, interest and costs," the action to be commenced within three months from the date of the confirmation of the sale of the mortgaged premises, "in which action judgment shall be rendered and execution issued only for the balance due on the debt and interest and costs of the action." *Sections 2:65–1, 2:65–2.* The decree for sale and the order confirming sale are still conclusive of the *quantum* of the deficiency, except that credit may be had for the fair market value of the mortgaged premises in the foreclosure proceeding itself and also in the action at law for the deficiency if the bond was made after March 29th, 1933. *Murray* v. *Pearce, 95 N. J. Law 104; Mutual Savings Fund Harmonia* v. *Gunne, 110 N. J. Law 41; United States Life Insurance and Trust Co.* v. *Vandegrift, 51 N. J. Eq. 400; Vanderbilt* v. *Brunton Piano Co., 111 N. J. Law 596; Montclair Savings Bank* v. *Sylvester, 122 N. J. Eq. 518; Henderson* v. *Weber, 131 N. J. Law 299;* appeal dismissed, *322 U. S. 713; 64 S. Ct. 1270; 88 L. Ed. 1555.* And the recovery of a judgment for a deficiency on the bond serves to "open the foreclosure and sale of the premises," and to invest the judgment debtor with the right of redemption by the payment of "the full amount of money for which the decree was granted," with interest and costs and the purchaser's "reasonable expenses" for taxes, assessments, and prior liens, necessary repairs, and interest thereon, less such income as may be derived from possession of the premises. *Section 2:65–4.*

This must needs be so, for otherwise the judgment at law recovered pursuant to the statute in the enforcement of the contract of the parties would be subject to nullification by the judgment debtor's fraud. The judgment is not subject to review in equity. The judgment creditor here was not guilty of fraud in the recovery of the judgment; and there is no occasion for equitable intervention for accident or mistake. Equity may not indulge in arbitrary action. The statute and the contract are binding alike upon courts of law and equity. *Goerke-Kirch Co.* v. *Goerke-Kirch Holding Co., 118 N. J. Eq. 1.*

The case of *Bourgeois* v. *Risley Real Estate Co., supra,* is not in point. There equitable interposition was directed to the satisfaction of a judgment recovered at law; here, it is the judgment itself that is under attack. It would be a plain perversion of principle to hold that this judgment, valid and enforceable at law, is unenforceable in equity under the principle that he who seeks equity must do equity. The maxim simply obliges the party seeking equitable relief to do what is required by conscience and good faith. It demands the enforcement of the equities of the adversary party. It applies only where the principles of equity may thereby be served. But courts of equitable cognizance may not create new substantive rights under the guise of doing equity. The equities which the moving party may be required to concede must exist in fact and be cognizable in law. The party seeking relief is not required to sacrifice his own rights. Equity may not, under this principle, alter the contract of the parties, but must enforce it according to its terms. *Cityco Realty Co.* v. *Slaysman, 160 Md. 357; 153 Atl. Rep. 278; 30 C. J. S. 461 et seq. Vide Minzesheimer* v. *Doolittle, 60 N. J. Eq. 394.* Complainant has not been guilty of unlawful or inequitable conduct which precludes enforcement of the judgment in equity by the measure here invoked. It would be anomalous to hold that one could in conscience and good faith recover a judgment at law or decree in equity for a personal deficiency (as on an assumption agreement), and yet could not have relief in equity against a fraudulent attempt to defeat its enforcement. The acceptance of the view here advanced

would overturn the law of mortgages and the foreclosure of mortgages and nullify the statute. There is also a maxim that equity follows the law; and equity and courts of law alike are bound by legislative regulation of the rights of the parties, not to mention the obligation of the contract.

Here, the mortgagor could have had credit for the fair market value of the mortgage security in the foreclosure proceeding, if it had chosen to exercise the right. *Vanderbilt* v. *Brunton Piano Co., supra; Federal Title and Mortgage Guaranty Co.* v. *Lowenstein, 113 N. J. Eq. 200; Fruzynski* v. *Jablonski, 117 N. J. Eq. 117; Broadman* v. *Colonial Building-Loan Association, 118 N. J. Eq. 275; Harvester Building and Loan* v. *Kaufherr, 121 N. J. Eq. 327;* affirmed, *122 N. J. Eq. 373; Henderson* v. *Weber, supra.* The failure to make timely application for this relief is attributed simply to "ignorance or dispair," and is not excused. There can be no doubt of the power of the Circuit Court to grant such relief. In the foreclosure of mortgages and the sale of the mortgaged lands, the Circuit Courts are invested with "the same jurisdiction and powers as the Court of Chancery has in like cases;" and the statute provides the same procedure as in Chancery in like proceedings. *R. S. 2:65–35.* There can be no doubt as to the constitutional sufficiency of this legislation. Article IV, section VII, paragraph 10 of the Constitution of 1844, as amended, empowered the legislature to vest in the Circuit Courts or Courts of Common Pleas "Chancery powers, so far as relates to the foreclosure of mortgages and sale of mortgaged premises." *Vide Miller* v. *Bond and Mortgage Guaranty Co., 121 N. J. Eq. 197.*

The evidence is clear and convincing that all three conveyances to the Listers and Liebmann and the Borough of Point Pleasant were made with intent to hinder, delay and defraud complainant in the enforcement of his judgment, within the intendment of *R. S. 25:2–1 et seq.* and *R. S. 14:14–2.* And there is no doubt whatever that the grantor was then insolvent; and that the Listers participated in the fraudulent intent. As to Liebmann and the Borough, the evidence in each case establishes that the value of the lands conveyed was greatly in excess of the grantor's antecedent indebtedness to

the grantee, the ostensible and sole consideration for the transfer; and it is the rule that in the case of a voluntary conveyance, or one which is found to be voluntary as to the excess over proper consideration, the participation of the grantee in the fraudulent intent is not essential to void the transfer. *Hersh* v. *Levinson Bros., Inc., 117 N. J. Eq. 131.* Liebmann's claim was grounded in a second mortgage covering the lands thus conveyed to him: and there was a clause in the deed providing that the mortgage should not merge in the title thereby conveyed; and this, in itself, tends to negative a purchase of the equity of redemption, and to suggest a transfer of the legal title for some ulterior purpose which gave rise to doubt as to the validity of the title by deed. *Burne* v. *Partridge, 61 N. J. Eq. 434.* The conveyance to Liebmann was Lister's idea; and the circumstances indicate that the plan was all but consummated without Liebmann's knowledge. Liebmann acquiesced in the transfer when the subject was broached, but the conclusion is inescapable that he considered the conveyance not as a satisfaction of his mortgage, but as a device to place the title in him for some purpose not related to the service of his own interest. Thereafter, Lister collected the rents, made the repairs, and managed the property. Liebmann explains that this was done because of his continuing confidence in Lister. Assuming a valid mortgage indebtedness, the conveyance was voluntary to the extent that the value of the property exceeded the mortgage debt. It is clear that the design was to salvage this excess value, and thus to defraud complainant. We make no determination as to the validity of Liebmann's mortgage or the amount due thereon. We do not credit the explanation that the conveyance was made to the Borough to avoid the costs of tax foreclosure proceedings. We are not persuaded that the suggestion of a foreclosure of the tax sale certificates at that particular time was pure coincidence. The certificates were ten years old; and nothing had occurred to give rise to the need for foreclosure. On the contrary, the current taxes were then being paid, and the arrears liquidated as lots were sold. The mayor of the municipality and its attorney knew of the pendency of the deficiency suit when the conveyance was

negotiated and the deed delivered. The evidence demonstrates that the fair value of the lands conveyed is far in excess of the amount of the tax liens and interest. It is a significant circumstance that there was a refusal of complainant's tender to the borough of payment of the tax liens in full. It results that all three conveyances should be set aside, saving to Liebmann and the borough such liens as they, respectively, may otherwise have upon the lands conveyed.

Prior to the making of the decree under review, complainant caused an execution to be issued upon his judgment at law, and he purchased the lands at the sale held thereunder for the nominal sum of $100; and he complains that there was error in the Chancellor's refusal to adjudge that he is now the owner of the lands in virtue of the deed of conveyance made pursuant to the sale held under the execution. The case of *Swift & Co.* v. *First National Bank of Hightstown, 114 N. J. Eq. 417,* is cited.

The decree adjudged that ,the deeds are "fraudulent, null and void and of no effect as against the judgment recovered." The statute determines the rights of the parties. It renders void a deed made in fraud of creditors; and the decree so declares. But we are clear that the sale under the execution issued on the judgment at law was made under unfavorable conditions, due primarily to doubt as to the title to be conveyed and the number and location of the lots to be sold; and, since the insistence is that the fair value of the lands thus sold exceeds the *quantum* of the judgment, we are of the view that the relief afforded should be conditioned upon a resale of the lands in the execution of the judgment.

The decree is affirmed as to the Listers and Liebmann, and reversed as to the Borough of Point Pleasant, all with costs; and the cause is remanded for further proceedings in conformity with this opinion.

SCHETTINO, J. (Dissenting.)

Complainant, a judgment creditor of Bay Head Realty Co., a corporation (hereinafter called "the corporation") filed a bill to have certain conveyances of real property, made by

the judgment debtor, declared fraudulent and therefore null and void as to complainant.

At the close of the hearing, the Vice-Chancellor delivered his conclusions orally. The court granted complainant's prayer as to the conveyance to defendants Guy R. Lister and Florence Lister, his wife, and as to the conveyance to defendant Michael H. Liebmann, but dismissed the bill with respect to the conveyance to defendant Borough of Point Pleasant. From the decree all parties, except the borough, appeal.

Complainant was the assignee of a bond and mortgage executed by the corporation in the sum of $20,000, dated October 11th, 1927, due three years later. The mortgage covered premises other than the premises involved in the conveyances under attack. Complainant foreclosed the mortgage in the Circuit Court and on December 4th, 1945, purchased the property at the sheriff's sale for $300. Sometime in the first half of December, 1945, complainant instituted suit at law to recover the deficiency and on January 12th, 1946, judgment was entered in the sum of $30,531.57. The date of filing of the bill in this cause is not set forth but I gather from the testimony that it was filed on February 21st, 1946.

Lister and his brother each owned one third of the stock of the corporation and were the controlling directors and officers. Lister managed the affairs of the corporation. The conveyance to Lister and his wife was dated November 29th, 1945, and recorded on December 22d, 1945. The conveyance to Liebmann was dated December 27th, 1945, and recorded on December 28th, 1945. The conveyance to the borough was dated January 2d, 1946, and recorded on January 10th, 1946. After the foregoing transfers, the assets of the corporation consisted of what was described in the testimony as 60 or 70 lots.

Under a writ of execution issued in the deficiency suit, levies were made in February, 1946. Complainant claims that the levies embraced all the property conveyed to defendants and the 60 or 70 lots. On March 19th, 1946, after the filing of this bill, a sale was held under the writ of execution of all the corporation's right, title and interest in the properties levied upon and complainant purchased the same for $100.

Just what property was included in the sale and covered by the sheriff's deed is not clear. Complainant, himself, appears not to have been sure and the Vice-Chancellor upon examining the deed, which does not appear in the state of the case, commented, "Nobody can tell from this deed what it intends to convey."

The issues here presented are: (1) whether the conveyances were fraudulent; (2) whether complainant should be required, as a condition for the relief he seeks in equity, to credit the fair value of the mortgaged premises against the the deficiency judgment; and (3) whether complainant was entitled to an adjudication that he owned the properties as of March 19th, 1946, the date of his purchase at the execution sale, and to an accounting of the rents, profits and issues.

I agree with the conclusions of the majority that the transfers to Liebmann and the borough were fraudulent as to complainant.

I think that the state of the proof prevents a final determination with respect to the transfer to Lister and his wife. Mrs. Lister's rights rise no higher than his. She was merely his nominee. Lister testified that the corporation was indebted to him for moneys advanced to or for it and for back salary. He also testified that years before he had constructed a dwelling and another structure on some of the lots in question at his own cost with the understanding that the corporation would convey title to him. He occupied the dwelling but paid no rent.

In his oral conclusions the Vice-Chancellor found that Lister "attempted to prefer himself above other creditors." It is implicit in this finding that the Vice-Chancellor concluded that Lister was in fact a creditor of the corporation. No finding, however, was made below with respect to either the amount of Lister's claim or the value of the properties conveyed to Lister and his wife. I am unable to determine either fact from the record.

I have no doubt that the conveyance to Lister was prompted by the deficiency suit. He conceded knowledge of the suit but insisted that he took the conveyance for the purpose of satisfying his claim. If that were Lister's sole intent, the

transfer was not, merely because of that intent, rendered vulnerable under the fraudulent conveyance law. A preference, of course, tends to defeat other creditors and accordingly a debtor who prefers a creditor may be said to intend to hinder his remaining creditors. But that intent is not the intent condemned as fraudulent by the fraudulent conveyance law. If a transfer which is nothing more than a preference could be set aside in an action brought under the fraudulent conveyance law for the benefit of another creditor, obviously all that would be accomplished would be a mere substitution of preferences. A debtor in failing circumstances may prefer a creditor and the creditor "has the same right to accept a voluntary preference that he has to obtain a preference by superior diligence." *Hersh* v. *Levenson Bros., Inc.* (*Court of Errors and Appeals, 1934*), *117 N. J. Eq. 131, 135.*

As I have stated, there is nothing in the record to indicate that the conveyance to Lister exceeded in value the amount of his claim. It may be that a full hearing would show that the corporation actually intended not only to prefer Lister, but also to convey to him an excess value above the amount of his claim in order to conceal such excess from the complainant. A conveyance of an excess value with that further intent would be fraudulent within the meaning of the fraudulent conveyance law. If the corporation had that intent, Lister, in view of his activities in the corporate affairs, could not be acquitted of a like intent. On such finding Lister would take nothing from the transfer. A transfer cannot be parcelled between a permitted intent and a prohibited intent as to a transferee who participates in the fraudulent purpose. The right, given by *R. S. 25:2–15* to a purchaser who "without actual fraudulent intent" pays less than fair consideration, to retain the property as security for repayment was not designed for the benefit of a creditor who goes beyond obtaining a preference and knowingly participates in a plan to deprive other creditors of the excess value of the property. Whether the creditor in that situation agrees to hold the excess value for the secret benefit of his debtor, or accepts such excess value to enable his debtor to defeat another creditor, his participation in the fraudulent scheme vitiates the

entire transfer. *Equitable Life Assurance Society* v. *Patzowsky* (*Court of Errors and Appeals, 1942*), *131 N. J. Eq. 49*. Under the state of proofs it cannot be determined either that the corporation conveyed an excess value to Lister or that an excess value was conveyed to him with the mentioned fraudulent intent. In the absence of such proof the most that can be said is that the corporation preferred Lister.

I do not suggest that a director or officer who accepts a preference from the corporation may not incur liability to creditors for that action or that his preference may not be avoided. But a preference, as such, is not vitiated by the fraudulent conveyance law. Where nothing more than a preference is involved, justice to all parties may more appropriately be accomplished by the pursuit of other remedies in which the director or officer may share in the assets *pro rata* with other creditors of like standing of priority.

Upon the insolvency of a corporation its directors become *quasi*-trustees of the assets of the corporation for the benefit of all creditors. *Whitfield* v. *Kern* (*Court of Errors and Appeals, 1937*), *122 N. J. Eq. 332, 342; Montgomery* v. *Phillips* (*Court of Errors and Appeals, 1895*), *53 N. J. Eq. 203, 217*. Manifestly a director who is also a creditor cannot consistently with his trust prefer himself. He must see to it that the assets of the corporation are properly distributed among creditors. *Montgomery* v. *Phillips, supra; Mallory* v. *Kirkpatrick* (*Court of Chancery, 1895*), *54 N. J. Eq. 50, 53; Savage* v. *Miller* (*Court of Errors and Appeals, 1898*), *56 N. J. Eq. 432, 439; Taylor* v. *Gray* (*Court of Errors and Appeals, 1899*), *59 N. J. Eq. 621; Jessup* v. *Thomason* (*Court of Chancery, 1904*), *68 N. J. Eq. 443*.

A preference may be avoided under *R. S. 14:14–2* which declares null and void certain corporate transfers made after or in contemplation of insolvency. The bill in this case did not allege insolvency. It was predicated entirely on the theory of a fraudulent conveyance. But if the circumstances justifying relief under *R. S. 14:14–2* can be said to be established in the proof below, the relief warranted by that finding would be very different from the relief here accorded. If complainant succeeded under *R. S. 14:14–2*, he would not be entitled

to a preferential claim in the proceeds. *Central-Penn National Bank* v. *New Jersey Fidelity and Plate Glass Insurance Co.* (*Court of Chancery, 1935*), *119 N. J. Eq. 265, 271, 272*. *R. S. 14:14–2* was not fashioned to accomplish substitutions of preferences. Rather its object is to avoid preferences to the end that corporate assets will be distributed ratably among creditors. *R. S. 14:14–2* contemplates a class bill. A creditor cannot, for his sole benefit, exercise rights which exist for the equal benefit of creditors. as a class. If the transfer to Lister is set aside as a preference, Lister is entitled to share ratably with complainant and all other creditors in the resulting fund.

I am therefore of the view that the cause should be returned to the Court of Chancery to the end that further proceedings may be had with respect to the Lister transfer consistent with the foregoing views.

Defendants sought to prove below that the fair value of the premises mortgaged to complainant so grossly exceeded the sum of $300 paid by him at the sale that in good conscience he should be required to credit the fair value of the mortgaged premises upon the deficiency judgment as a condition for relief in a court of equity. Thereby invoked is the maxim that he who seeks equity must do equity.

The Vice-Chancellor refused defendant's offer of proof on the ground that the corporation should have acted with greater diligence to protect itself when faced with a claim for a deficiency. In my view, this answer is not sufficient. If the debtor affirmatively sought relief against the deficiency judgment, a different question would be presented. Whatever may be equity's power in that situation, I have no doubt that, when the holder of a deficiency judgment seeks equity, the measure of his obligation to do equity is the justice of his claim and not the diligence of the defendant. Under this maxim many things may be required of a complainant which the defendant could not compel if driven to an independent action. *Pom. Eq. Jur.* (*5th ed., 1941*), § *386a; 21 C. J. 176; Vanderveer* v. *Holcomb* (*Court of Errors and Appeals, 1866*), *17 N. J. Eq. 547; Township of Lodi* v. *Little Ferry National Bank* (*Court of Chancery, 1937*), *121 N. J. Eq. 213, 216;* •

*Fidelity Union Trust Co.* v. *Multiple Realty and Construction Co. (Court of Chancery, 1942), 131 N. J. Eq. 527, 540.*

"Equity abhors the unjust enrichment that comes from a double satisfaction." *Henderson* v. *Weber (Court of Errors and Appeals, 1944), 131 N. J. Law 299, 302.* "Satisfaction of the debt and not pillage of the debtor's estate is equity's relief." *Bourgeois* v. *Risley Real Estate Co. (Court of Chancery, 1913), 82 N. J. Eq. 211, 215; Fidelity Union Trust Co.* v. *Multiple Realty and Construction Co., supra* (at p. *541*). "All that the complainant can ask in equity is, that his debt shall be paid. If his legal rights are more extensive they must be enforced at law, without the aid" of Chancery. *Smith* v. *Vreeland (Court of Chancery, 1863), 16 N. J. Eq. 198, 204.* The case of *Baader* v. *Mascellino (Court of Chancery, 1933), 113 N. J. Eq. 189,* is precisely in point. There the holder of a deficiency judgment asked equity to aid him in the collection of the judgment by setting aside fraudulent conveyances. Chancery held that he must do equity by crediting the fair value of the mortgaged premises purchased by him at the foreclosure sale or relief in that forum would be denied. On defendant's appeal there was a reversal for reasons not here pertinent *(Court of Errors and Appeals, 1934), 116 N. J. Eq. 126.* Since complainant did not appeal, the soundness of the stated holding was not presented for review and accordingly the opinion of this court was silent with respect thereto.

Of the maxim that he who seeks equity must do equity, Pomeroy in his treatise, *Equity Jurisprudence (5th ed., 1941),* § *385,* states:

"This maxim expresses the governing principle that every action of a court of equity, in determining rights and awarding remedies, must be in accordance with conscience and good faith. In its broadest sense it may be regarded as the foundation of all equity, as the source of every doctrine and rule of equity jurisprudence; since it is undeniable that courts of equity do not recognize and protect the equitable rights of litigant parties, unless such rights are, in pursuance of the settled juridical notions of morality, based upon conscience and good faith. But as a practical principle, guiding the equity courts in their administration of justice, the maxim is only used in a much narrower and more special meaning. Even in this narrow significa-

tion it is a principle of most extensive application; it may be applied. in fact, in every kind of litigation and to every species of remedy. The meaning is, that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims, and demands justly belonging to the adversary party, and growing out of or necessarily involved in the subject matter of the controversy."

Pomeroy adds, *section 386a:*

"There is no obstacle in the way of decreeing that which is right and just to the defendant although he may be in some particular a wrongdoer."

There can be no doubt that anything more than a single satisfaction of a debt is highly inequitable. The question is whether there is any circumstance in this case which precludes equity from invoking the basic principle that he who seeks equity must do equity. It is suggested that a circumstance of such moment does here exist, namely, that the issue of fair value is *res adjudicata* by reason of prior adjudication between the parties.

If in fact the question of fair value had been determined in a prior proceeding between the parties, I would agree that the matter should not be reheard. A litigant must be content with one hearing with respect to that issue. But the issue of fair value was not litigated in any prior proceeding between the parties. It was not, and in fact could not have been, litigated in the deficiency suit because the bond and mortgage were executed prior to March 29th, 1933. *R. S. 2:65–3; Henderson* v. *Weber (Court of Errors and Appeals, 1944), 131 N. J. Law 299, 300.*

The order confirming sale in the foreclosure proceedings is not printed in the record, but ordinarily the order contains a recital that the premises were sold at the best price that they would, at the time of the sale, bring in cash and on that recital ratifies and confirms the sale.

In *Fidelity Union Trust Co.* v. *Essex County Mortgage Co. (Court of Errors and Appeals, 1941), 130 N. J. Eq. 351,*

it was held that an order confirming sale could not be set aside after the time fixed for appeal had expired. In *Broadman* v. *Colonial Building-Loan Association* (*Court of Errors and Appeals, 1935*), *118 N. J. Eq. 275,* the order confirming sale was held to be *res adjudicata* in a subsequent proceeding instituted by the debtor for the purpose of setting aside the order confirming sale to the end that the deficiency judgment be reduced by the amount of the fair value of the property. The order confirming sale was accordingly held to bar the granting of the affirmative relief sought by the debtor. And in *Harvester Building and Loan Association* v. *Kaufherr* (*Court of Errors and Appeals, 1937*), *122 N. J. Eq. 373,* in which cross-proceedings of the debtor were construed to seek like affirmative relief, the order confirming sale was again held to be *res adjudicata* and a bar.

I agree that a judgment debtor may not collaterally attack the order confirming sale, either to upset the sale or to obtain such affirmative relief as may be granted only after the order confirming sale is vacated. But there is a decisive difference between the right of a debtor to compel his creditor to reduce the amount of his demand and the right of a creditor to insist unconditionally upon the aid of a court of equity. As stated above equity may, as a condition to granting relief, require of a complainant concessions dictated by conscience and morality which a defendant could not obtain by affirmative action. None of the cases considered above goes the length of holding that an order confirming sale prevents equity from requiring the complainant to do equity. I can think of no consideration which warrants the conclusion that equity's sweeping power in this regard is frustrated by the fact that the claim prosecuted by the complainant has the dignity of a judgment.

As already pointed out, it was held in *Baader* v. *Mascellino, supra,* that neither the order confirming sale nor the fact the complainant held a deficiency judgment operated to compel equity to assist in an unconscionable recovery. Although in the opinion in *Harvester Building and Loan Association* v. *Kaufherr, supra,* the soundness of the decision in *Baader* v. *Mascellino* was questioned, that opinion was not disapproved.

In the widely cited case of *Bourgeois* v. *Risley Real Estate Co., supra,* complainant sought to set aside conveyance of his debtor as fraudulent. Complainant had purchased the property at an attachment sale for an unconscionable figure and the sale was confirmed by the law court. Vice-Chancellor Backes refused to declare title to be in the complainant unless the complainant would do equity. The fact that the attachment sale had been confirmed presented no obstacle to that result.

In *Fidelity Union Trust Co.* v. *Multiple Realty and Construction Co., supra,* Vice-Chancellor Berry carefully reviewed the prior decisions in this State, and in harmony with the earlier case of *Better Plan Building and Loan Association* v. *Holden (Court of Chancery, 1933), 114 N. J. Eq. 537,* concluded that in a suit in equity for a deficiency the complainant would be required to do equity by crediting the fair value as a condition for relief and that the order confirming sale did not free complainant of that obligation. With that conclusion, I agree. But I cannot perceive any appreciable distinction between that case and the one here presented to the same Vice-Chancellor. The circumstance that in this case a deficiency judgment was entered at law constitutes no greater barrier to doing equity than the unassailable order confirming sale. If the maxim under discussion need not yield to the order confirming sale, I cannot understand why a second adjudication, namely, the deficiency judgment, should rise as an insuperable obstacle. In either situation equity does not deprive complainant of rights which he already has. He may pursue those rights at law. The order confirming sale, the judgment and all of complainant's rights thereunder remain inviolate. "But the question whether a court of equity shall render active assistance to enforce the judgment and execution is a very different matter. It is not enough that complainants come into a court of equity with a legal advantage; they must come with a cause essentially equitable." *Brinkerhoff* v. *Ransom (Court of Errors and Appeals, 1898), 57 N. J. Eq. 312, 317.* If complainant calls upon the conscience of equity for aid, he must act in like

conscience. He must be satisfied with one satisfaction of his debt or proceed elsewhere.

In *Smith* v. *Vreeland, supra,* complainant asked equity to confirm his title to certain property which his debtor had fraudulently conveyed and which complainant purchased at an execution sale under his judgment at law. The Chancellor refused to aid complainant unconditionally because the amount realized at the sale was unconscionably inadequate. The Chancellor refused to grant relief unless complainant would agree to accept only a single satisfaction of his original demand. Chancery did not hesitate to examine the justice of complainant's position by inquiring into the fairness of the price obtained at the sale.

In *Mississippi and Missouri Railroad Co.* v. *Cromwell (1875), 91 U. S. 643,* a judgment creditor of a county levied upon shares of stock issued by the railroad company to the county. At the execution sale Cromwell who, the court found, stood in the shoes of the judgment creditor, became the purchaser for $50. He sought to compel the railroad company to transfer on its books and to issue to him a certificate for the mentioned shares of stock standing in the name of the county. The Supreme Court held that Cromwell was not entitled to the aid of the court, stating at *p. 645:*

"To him it will be a windfall, like a prize in a lottery. He paid no adequate consideration to entitle him to claim it as a matter of equity. If the law gives it to him, he should seek his remedy at law. Equity will not lend its aid to any such games of hazard. * * * He comes into court with a very bad grace when he asks to use its extraordinary powers to put him in possession of thirty thousand dollars' worth of stock for which he paid only fifty dollars. The court is not bound to shut its eyes to the evident character of the transaction. It will never lend its aid to carry out an unconscionable bargain, but will leave the party to his remedy at law."

This court cited the *Cromwell Case* with approval in *Minzesheimer* v. *Doolittle (Court of Errors and Appeals, 1900), 60 N. J. Eq. 394, 398.*

*Bohde* v. *Lawless (Court of Chancery, 1881), 33 N. J. Eq. 412,* is distinguishable. There complainants obtained

a decree for foreclosure with a personal decree for deficiency. The mortgaged premises were sold to complainants for $500, leaving a deficiency of more than $5,000. Complainants then sought to reach property fraudulently conveyed by the debtor. The Chancellor said (at *p. 414*):

"On the hearing it was insisted that the fact that the complainants were the purchasers of the mortgaged premises at the sale under the foreclosure, for $500, while the property was and is worth a large sum beyond that amount (perhaps enough to cover the entire amount of the deficiency), is of itself enough to induce this court to refuse to aid the complainants in enforcing payment of the deficiency. But it is quite evident that that consideration cannot avail the defendants. The complainants are before the court seeking payment of a lawful demand, and they have been guilty of no fraudulent or inequitable conduct to debar them from the aid of equity."

Apparently the defendant contended that the fact that complainants purchased the property for an inadequate sum constituted unclean hands barring all relief in equity. Obviously that fact did not constitute unclean hands. The Chancellor did not there consider the patently different question whether under the maxim that he who seeks equity must do equity, the complainants should be compelled to credit the fair value of the property and thus confine their relief in equity to the true balance of the debt. If the quoted language may be deemed to deal with the latter maxim, then I think that decision is unsound and incompatible with the other authorities discussed above.

It is urged that the contract and the statute relating to mortgages and bonds (*R. S. 2:65–1 et seq.*) are binding alike upon the courts of law and equity. Unquestionably equity may not foist a contract upon parties contrary to their intentions. But the fact that the right in suit is based upon contract has never been deemed to free a complainant of the obligation to do equity. I can find nothing in the statute referred to which purports to require equity to give its aid in the teeth of a basic principle guiding the exercise of equitable jurisdiction.

Complainant seeks an adjudication that he is the owner of all property sold under the writ of execution issued on the deficiency judgment. He thereby claims title to all the property alleged to be fraudulently conveyed and to the so-called 60 or 70 lots which remained in the corporation after the conveyances. Complainant's own witnesses valued the transferred property as high as $120,000 and Lister valued the 60 or 70 lots at $10,000 or $15,000. For all of this complainant paid $100. The decree in effect adjudges title to be in complainant.

It seems to me that in the light of complainant's own proofs of valuations it should be concluded that "To decree the lands absolute in the complainant would create a situation quite as iniquitous and oppressive and as obnoxious to a court of conscience as that arising out of the fraudulent conduct of the defendants." *Bourgeois* v. *Risley Real Estate Co.* (*Court of Chancery, 1913*), *82 N. J. Eq. 211, 214.* Complainant should be required to consent to a resale as a condition for equitable relief.

Complainant should not be entitled to the benefit anywhere of any findings made in this court and the bill should be dismissed with costs and with prejudice to further proceedings in equity unless complainant agrees to do equity. The decree should be reversed in its entirety and the cause remanded to Chancery for further proceedings not inconsistent with this opinion.

As to Liebmann—

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, JJ. 12.

As to Listers—

*For affirmance*—WACHENFELD, J. 1.

*For reversal*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 12.