I. Starlet Rosenthal, J.
This is an action by plaintiff to recover the sum of $4,128.80- as a holder of a winning twin-double ticket purchased from the defendant. The plaintiff testified at the trial that he had gone to the defendant raceway and purchased a winning twin-double ticket bearing numbers 7-6. Plaintiff testified he later went to a roped-off area where he showed the ticket to two security guards who permitted him to enter such area; and he then went to a particular window where he presented the ticket to a person who asked Mm for Ms driver’s license and Social Security card. The man behind the window was an identification clerk named Thomas McDermott, employed by the defendant to obtain information for Internal Revenue purposes. Plaintiff further testified the identification clerk required Mm to sign the back of the ticket and directed him to the cashier to collect on the ticket he presented. When he went to the cashier and presented the ticket, he was told that he did not have a winner as he presented a losing ticket hearing the numbers 5-6; and the plaintiff registered an immediate protest with the defendant.
Mr. McDermott testified that, at the time the plaintiff presented the ticket, he thought plaintiff must have had a winning ticket because he would not have otherwise written Ms ticket up. The defendant introduced evidence to show there were only 49 winning tickets issued by the raceway, and the raceway paid out on 49 winning tickets. At the conclusion of the plaintiff’s case, the defendant moved for judgment, renewing this motion at the conclusion of the defendant’s case. After the jury returned a verdict in favor of the plaintiff, the defendant moved *940 to set aside the verdict as contrary to the weight of evidence. The court reserved decision on these motions.
The defendant’s motion for judgment at the conclusion of the defendant’s case, on which decision was reserved, is granted. The evidence showed that the plaintiff was a man familiar with the proceedings at the raceway, and, even if he was not, he was still subject to all the existing rules and regulations prescribed by the raceway and the State Harness Racing Commission. As can be seen from chapter 254 of the Laws of 1940 (as amd.) and the Rules of the State Harness Racing Commission, racing in the pari-mutuel operation is strictly controlled by the State. It may be true that the plaintiff presented a winning ticket to Mr. McDermott so Internal Revenue Service forms could be completed; but, if the plaintiff had a winning ticket, it was his responsibility to see that the identification clerk returned it to him. The plaintiff has argued that the identification clerk had switched the ticket on him; however, if the court were to permit the plaintiff to recover, it might encourage certain persons to attempt to switch tickets, while presenting tickets for identification purposes only, in order to give the winning ticket to a third person so as to collect twice.
Payment on winning pari-mutuel tickets may be made only upon presentation and surrender of such tickets.
The Rules and Regulations of the State Harness Racing Commission provide: 1 ‘ Payments on all winning pari-mutuel tickets and tickets refundable according to rules shall be made only on presentation and surrender of appropriate ticket. Mutilated tickets and those whose validity are questioned shall be submitted to the New York State Tax Commission for inspection.” (19 NYCRR 102. 15 [b].)
The plaintiff is presumed to know that as every sport has its rules so equally every participant must abide by such rules; and, if plaintiff did not like the rules, he was at liberty to refrain from betting. (Salmore v. Empire City Racing Assn., 123 N. Y. S. 2d 688.) There is no statutory provision made for lost tickets and this is purposely so since the ticket constitutes an essential part of the entire racing- format and the failure to present it, for whatever reason, is a waiver of the right to recover winnings. (Carr v. State of New York, 30 Misc 2d 983, affd. 15 A D 2d 709.) There is no valid pari-mutuel bet or wager independent of a pari-mutuel ticket; because under the law there is no wagering contract, agreement or bet between the Racing Association and the patron, as the transaction is between the participants in the pari-mutuel pools. (Holberg v. *941 Westchester Racing Assn., 184 Misc. 581.) The defendant is merely the stakeholder of the bets, and as such acted merely as the administrative agent in the collection and distribution of the winning pool. (Shapiro v. Queens County Jockey Club, 184 Misc. 295.)
The plaintiff had the responsibility of seeing to it that the winning ticket was presented to the cashier for payment; and, if he lost such ticket after presenting it to the identification clerk, for whatever reason, it is the plaintiff who must bear the loss. The case at bar is distinguishable from Giordano v. Metropolitan Jockey Club (176 Misc. 506), since the defendant here would be subject to double liability if it were to pay the plaintiff. As the defendant has shown it issued only 49 winning tickets and that it paid out the entire pool to 49 persons who presented winning tickets, the plaintiff cannot recover. The defendant could not fulfill its obligations to the State and its stockholders if it would subject itself to double liability by paying the claims of persons not presenting winning tickets. Since the provisions of the statute are for the benefit of the State, every fair intendment should be accorded the defendant in its interpretation where it is sought to charge the defendant with inconsistent liabilities. (Aliano v. Westchester Racing Assn., 265 App. Div. 225.) Even though the court, at the urgings of plaintiff’s counsel, permitted the case to go to the jury, the court nonetheless would have had to set aside the verdict of the jury as contrary to the weight of the evidence, were it not constrained to grant defendant’s motion for judgment at the end of the entire case.