129 N.J. Super. 499 (1974)
324 A.2d 97
JOHN KARAFA, PLAINTIFF,
v.
NEW JERSEY STATE LOTTERY COMMISSION, RALPH F. BATCH, DIRECTOR, DIVISION OF THE STATE LOTTERY, AND WILLIAM T. CAHILL, GOVERNOR, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 31, 1974.
*500 Mr. Irving Ostrow, attorney for plaintiff.
*501 Mr. William F. Hyland, Attorney General of New Jersey, attorney for defendants (Mr. Michael E. Goldman, Deputy Attorney General appearing).
KIMMELMAN, J.S.C.
This lawsuit was instituted when the New Jersey State Lottery Commission refused to honor plaintiff's claim that he was the $50,000 winner of the June 24, 1971 weekly lottery drawing. Unfortunately, plaintiff was unable to produce the winning lottery ticket. The Lottery Commission now moves to dismiss the complaint for failure to state a claim upon which relief can be granted, and, accordingly, the following factual allegations may be accepted as true for the purpose of the motion:
1. Prior to June 24, 1971 plaintiff purchased from Theodore McKeown, owner of the Edgar Diner, Linden, New Jersey, who was a lottery ticket sales agent, a strip of ten tickets for the weekly drawing to be held on June 24, 1971.
2. On said date the $50,000 winning ticket number was announced as 965321.
3. The next day plaintiff went to the diner in the morning and asked a waitress to check his string of tickets because he couldn't see the numbers clearly without his glasses. She examined the tickets and let out a joyous shout, exclaiming: "You've won $50,000." She detached the winning ticket, gave it to plaintiff and he verified the fact that it was the winning number, 965321. Six or seven persons, including the owner, were in the diner at that time, all witness to the event.
4. Later in the day plaintiff brought the ticket home to his mother and asked her to hold it for safekeeping until he could get some tax advice as to how to claim and report the winnings.
5. On July 3, 1971 it was reported in the Elizabeth Daily Journal that plaintiff had won the top prize at the June 24, 1971 drawing after purchasing the ticket at the Edgar Diner.
*502 6. Some time later it was discovered that plaintiff's mother had inadvertently thrown away the winning ticket along with an accumulated batch of old worthless tickets.
7. On August 31, 1971 the executive director of the Lottery Commission rejected plaintiff's claim without physical production of the winning ticket.
8. The records of the Lottery Commission indicate that ticket number 965321, worth $50,000, is still outstanding.
Although plaintiff's lamentable predicament evokes much sympathy, there is a lack of legal precedent to support his contention that the Lottery Commission must honor his claim. Because this is a case of first impression a review of the organic and legislative provisions is in order.
N.J. Const. (1947), Art. IV, § VII, par. 2, prohibited gambling of any kind from being authorized by the Legislature unless the specific kind had first been submitted to the people and approved by a majority vote at a statewide general referendum. In 1969 that clause of the Constitution was amended by the addition of the following language:
It shall be lawful for the Legislature to authorize the conduct of State lotteries restricted to the selling of rights to participate therein and the awarding of prizes by drawings when the entire net proceeds of any such lottery shall be for State institutions, State aid for education.
This amendment to Art. IV, § VII, par. 2 was implemented by the Legislature by the enactment of the State Lottery Law, L. 1970, c. 13, § 1 et seq., N.J.S.A. 5:9-1 et seq., effective February 16, 1970. Generally, there was established within the Department of Treasury a State Lottery Commission with power "to promulgate such rules and regulations governing the establishment and operation of a State Lottery as it deems necessary and desirable in order that the mandate of the people expressed in their approval of the amendment to * * * the Constitution * * * may be fully implemented." N.J.S.A. 5:9-7. It was further provided that
*503 [S]uch rules and regulations may include, but shall not be limited to, the following:

* * *
(5) The manner of payment of prizes to the holders of winning tickets or shares.

* * *
(12) Such other matters necessary or desirable for the efficient and economical operation and administration of the lottery and for the convenience of the purchasers of tickets or shares and the holders of winning tickets or shares. [N.J.S.A. 5:9-7]
Pursuant to its legislative mandate the Lottery Commission has promulgated regulations covering the procedures and safeguards that must be followed in order to claim a prize. See N.J.A.C. 17:21-4.1 et seq. These regulations, being substantive in nature, have the force and effect of law. Hackensack v. Rubinstein, 37 N.J. 39, 45 (1962); Rutgers Council v. N.J. Bd. Higher Education, 126 N.J. Super. 53, 63 (App. Div. 1973). N.J.A.C. 17:21-4.2 provides, among other things that
The claimant is required to fill out a claim form which is obtained from the claim center and present the completed form together with the "winning" ticket to any claim center; provided, however, that the Director may, in his discretion, authorize the cash redemption of certain prizes upon presentation and proper validation of a winning ticket at certain designated locations. [N.J.A.C. 17:21-4.2(a); emphasis supplied]
Where cash redemption is not authorized, the claim center must:
* * * forward the winning ticket and a copy of the claim form to the State Lottery for validation.
Upon validation by the State Lottery, a check will be forwarded to the claimant in payment of the amount due. [N.J.A.C. 17:21-4.4(b) and (c)]
On the basis of statutory construction alone, it would appear that the Legislature was of a mind to restrict the payment of prizes to "holders of winning tickets," i.e., physical holders of winning tickets. That phrase was used carefully *504 in both subparagraphs (5) and (12) of N.J.S.A. 5:9-7 in authorizing the Lottery Commission to promulgate appropriate regulations. There is no reason to ascribe to the phrase used a broad or liberal interpretation so as to include (a) one who was a holder of a winning ticket or (b) one who is entitled to be but is not presently a holder of a winning ticket. The State Lottery Law is in no sense remedial legislation designed to cure or correct a specific social ill. On the contrary, while the State Lottery Law was designed to provide a recreational outlet for those so inclined, its main purpose is to provide revenue for state institutions and for state aid to education. It provides for a form of gambling as an exception to the general constitutional prohibition and hence neither its provisions nor words may be extended beyond their normal and common meaning and usage. In that context a court may not employ great liberality in statutory construction in order to reach what to it may seem a socially desirable result from the viewpoint of the individual involved. Cf. State v. Meinken, 10 N.J. 348, 352 (1952); Boise Cascade Home & Land Corp. v. Division of the N.J. Real Estate Comm'n, 121 N.J. Super. 228, 240 (Ch. Div. 1972), and Carianni v. Schwenker, 38 N.J. Super. 350, 361 (App. Div. 1955). By restricting payment of prize money to "holders of winning tickets" the clear legislative purpose was to keep the administrative machinery geared for the payment of winnings as simple and as efficient as possible. That machinery was not to become bogged down in the resolution of claims, conflicting or otherwise, in the event of misplaced, lost or destroyed tickets. The procedure simply calls for the production of the winning ticket. Unless that is done, payment cannot be made. Responsibility for nonproduction of tickets is not assumed by the State but left to remain with those whose fault, neglect, carelessness or other inadvertence caused the loss.
Anticipating the foregoing interpretation of the State Lottery Law now adopted by the court, plaintiff seeks to invoke *505 the classic equitable remedy of establishing a lost document and declaring him to be its holder. Farber v. Plainfield Trust Co., 136 N.J. Eq. 183 (Ch. 1945); Moore v. Durnam, 63 N.J. Eq. 96 (Ch. 1902), aff'd 69 N.J. Eq. 828 (E. & A. 1905). The principle is succinctly set forth in 52 Am. Jur.2d, Lost and Destroyed Instruments, § 2 at 116:
It is a well-recognized principle that the accidental or unintentional loss or destruction of a written instrument does not, as a general rule, change or impair the obligation of the parties thereto; rights in real or personal property, or to a debt, evidenced by the instrument are not ordinarily lost. This is because the writing itself does not give the right of which it is evidence. Although the loss or destruction of the instrument may impair the owner's evidence of the right he claims thereunder, he may still enforce the right and to that end may maintain an appropriate action to recover on the obligation. In many instances, it may be desirable nor necessary to have the instrument re-executed or restored, and if this is not done by the voluntary act of the party, resort may be had to a court empowered to grant such relief.
Unfortunately, a lost lottery ticket may not be established by judicial declaration. Unlike a contract, bond, note or other instrument which merely serve as evidence of an underlying obligation which does not change or become impaired upon loss or destruction of the written evidence, a winning lottery ticket by virtue of legislative fiat limiting payment to holders is itself the obligation and debt. Without its surrender the debt or obligation remains until extinguished by the expiration of the time period within which to make claim. N.J.A.C. 17:21-7.1.
Courts of equity may not assume a free rein to dispense their distinctive brand of justice as the equities of a case would seem to demand. Often misunderstood and generally underapplied is the maxim which requires equity to follow the law. "Undoubtedly, equity follows the law more circumspectly in the interpretation and application of statute law than otherwise." Giberson v. First National Bank of Spring Lake, 100 N.J. Eq. 502, 507 (Ch. 1927). In Camden *506 Trust Co. v. Handle, 132 N.J. Eq. 97 (E. & A. 1942), the court said:
Equity follows the law. While it will provide means of enforcement not to be had at law, it is bound to regard the rights of the parties as established at law unless a countervailing equity calls for relief. The maxim is applicable to the interpretation of statutes and as well to matters of public policy. [at 108]
And in Natovitz v. Bay Head Realty Co., 142 N.J. Eq. 456 (E. & A. 1948), the rule was likewise restated:
There is also a maxim that equity follows the law; and equity and courts of law alike are bound by legislative regulation of the rights of the parties, not to mention the obligation of the contract. [at 464]
This court is bound by the maxim and thus must follow the legislative mandate and may not establish by judicial declaration the lost ticket.
The result now reached by the court is neither novel nor illogical. It is analogous to the requirement under the Uniform Commercial Code that to be considered the "holder" of an instrument, one must be in possession of it. See N.J.S.A. 12A:1-201 (20); O.P. Ganjo, Inc. v. Tri-Urban Realty Co., Inc., 108 N.J. Super. 517, 522 (Law Div. 1969).
The result also finds support in cases dealing with the subject of pari-mutuel betting which uniformly deny recovery to winning players who lose their tickets. Carr v. State, 15 App. Div. 2d 709, 223 N.Y.S.2d 229 (App. Div. 1962), app. dism. 371 U.S. 14, 83 S.Ct. 44, 9 L.Ed.2d 49 (1963); Mills v. Roosevelt Raceway Inc., 59 Misc.2d 938, 300 N.Y.S.2d 995 (D. Ct. 1969), rev'd on ground that fault was attributable to defendant's agent, 66 Misc.2d 251, 320 N.Y.S.2d 766 (App. Div. 1970); Epps v. Yonkers Raceway Inc., 21 App. Div.2d 798, 250 N.Y.S.2d 751 (App. Div. 1964); Hochberg v. New York City Off-Track Betting Corp., 74 Misc.2d 471, 343 N.Y.S.2d 651 (Sup. Ct. 1973), aff'd 43 A.D.2d 910, 352 N.Y.S.2d 423 (App. Div. 1974). In *507 Carr, supra, the Supreme Court of New York cited and relied upon statutory language strikingly similar to the New Jersey State Lottery Law, e.g., "presentation of winning tickets" "winning patrons," "holders of winning tickets therein, provided such tickets be presented for payment," "[d]isposition of unpaid money due on account of pari-mutuel tickets not presented." That court also construed the relevant statutes strictly as being in derogation of the strong policy against gambling expressed in the New York Constitution.
Accordingly, the position of the Lottery Commission is well taken and plaintiff's complaint will be dismissed for failure to state a claim upon which relief can be granted. Costs will not be allowed.