764 A.2d 486 (2001)
Martin RYAN, Plaintiff-Respondent,
v.
NEW JERSEY RACING COMMISSION, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 12, 2000.
Decided January 12, 2001.
John J. Farmer, Jr., Attorney General, attorney for appellant (Nancy Kaplen, Assistant Attorney General, of counsel; Judith A. Nason, Deputy Attorney General, on the brief).
Robert J. Genovese, attorney for respondent.
Before Judges PRESSLER, KESTIN, and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
Defendant, the New Jersey Racing Commission, appeals from a judgment for $3,995.20 and court costs in favor of plaintiff, Martin Ryan, entered after a trial in Special Civil Part on plaintiff's claim for payment on an allegedly stolen winning superfecta parimutuel racing ticket he purchased at the Meadowlands Racetrack. We reverse.
Plaintiff contended that on March 4, 1998, he purchased several winning tickets for a horse race at the Meadowlands Racetrack, among which was the "stolen" ticket that is the subject of his claim. He alleges *487 that he bought this ticket at the same time as his other tickets. He testified that after the race was completed, unaware that the ticket in question was a winning superfecta ticket, he handed the ticket to a stranger, who walked away with it without any protest by plaintiff. The trial judge accepted plaintiff's testimony and entered judgment accordingly.
The Racing Commission asserts on appeal that the trial court's judgment is contrary to the applicable regulations, which it contends preclude payment on racing bets except on presentation of the ticket. It contends further that the ticket was never cashed, that it expired six months after it was issued, and that the expired ticket could not be paid even if it had remained in plaintiff's possession and he had attempted to surrender it in exchange for payment. It also contends that the trial court lacked jurisdiction because plaintiff's recourse was to appeal from the Racing Commission to the Appellate Division, rather than to begin an action in the Law Division, Special Civil Part.
We reverse because the trial judge erred in determining first that physical surrender of a racing ticket is not a prerequisite to obtaining payment of the ticket, and second that a ticket can be paid after its six month expiration date.
To protect the public from the dangers inherent in all forms of gambling, the Legislature vested the Racing Commission with powers necessary to enable it to carry out the Racing Act of 1940, N.J.S.A. 5:5-22. Horsemen's Benev. and Protective Ass'n, New Jersey Div. v. Atlantic City Racing Ass'n, 98 N.J. 445, 452, 487 A.2d 707 (1985) (regulation of horse racing is within the authority of the Legislature to protect the health, safety, and general welfare of the people). The Racing Commission's powers include the authority to prescribe rules, regulations and conditions under which horse racing is to be conducted in this State. N.J.S.A. 5:5-30. Pursuant to this broad authority, the Racing Commission promulgated N.J.A.C. 13:70-29.13, which reads in material part:
N.J.A.C. 13:70-29.13 Ticket claims ...
(b) No claim shall be considered thereafter and no claim shall be considered for tickets thrown away, lost, changed, destroyed or mutilated beyond identification.
(c) Payment of wagers will be made only on presentation of appropriate pari-mutuel tickets.
The parties have not cited, nor has our own research disclosed, any case in this jurisdiction that deals directly with a denial of payment to a race track patron who cannot produce the winning ticket. At least one court, however, has upheld such a denial as to another form of legalized gambling.
In Karafa v. New Jersey State Lottery, 129 N.J.Super. 499, 324 A.2d 97 (Ch.Div. 1974), the Lottery Commission refused to pay a claim to a person who alleged that he had purchased a winning lottery ticket. There, six or seven people observed plaintiff with the winning ticket, which was worth $50,000. The plaintiff gave the ticket to his mother for safekeeping. The plaintiff's mother inadvertently discarded the winning ticket with a batch of old, worthless tickets. The director of New Jersey's lottery rejected plaintiff's claim because he could not produce the ticket. In upholding the Lottery Commission's refusal to pay on the ticket, the court relied upon N.J.S.A. 5:9-7(a)(5), a statute containing language nearly identical to N.J.A.C. 13:70-29.13(c). The statute authorized the Lottery Commission to promulgate regulations dictating the conditions for the payment of prizes "to the holders of winning tickets[.]" The court found that this statutory language indicated a legislative intent to restrict payment to persons who physically possessed the ticket and that the Lottery Commission's promulgation of a regulation mandating possession was consistent with this intent. Karafa, supra, 129 N.J.Super. at 502-03, 324 A.2d 97. The court explained that *488 the clear legislative purpose was to keep the administrative machinery geared for the payment of winnings as simple and as efficient as possible. That machinery was not to become bogged down in the resolution of claims, conflicting or otherwise, in the event of misplaced, lost or destroyed tickets. The procedure simply calls for the production of the winning ticket. Unless that is done, payment cannot be made.

[Ibid. at 504, 324 A.2d 97]
In this appeal, plaintiff argues that the Racing Commission's intent in promulgating N.J.A.C. 13:70-29.13(b) was to enable a person whose ticket was stolen to be able to claim the proceeds if he could prove he purchased it. We disagree. The legal and policy issues examined in Karafa are fundamentally indistinguishable from those involved here.
Horse racing is a highly regulated industry, as are other forms of legalized gambling. This is due in large part to "the danger of clandestine and dishonest activity inherent in horse racing, as in all forms of gambling...." De Vitis v. New Jersey Racing Commission, 202 N.J.Super. 484, 490-91, 495 A.2d 457 (App.Div.), certif. denied, 102 N.J. 337, 508 A.2d 213 (1985). See also Jersey Downs, Inc. v. Division of New Jersey Racing Commission, 102 N.J.Super. 451, 457, 246 A.2d 146 (App. Div.1968). The policy rationale respecting lottery regulation addressed in Karafa applies with equal force to the regulations promulgated by the Racing Commission, namely N.J.A.C. 13:70-29.13.
Plaintiff's contention that he need not surrender his ticket to obtain payment is not supported by his interpretation of N.J.A.C. 13:70-29.13(b).[1] Other jurisdictions that have dealt with this issue have uniformly denied recovery where the wagerer could not physically produce a valid ticket. See, e.g., Carr v. State of New York, 15 A.D.2d 709, 223 N.Y.S.2d 229 (App.Div.1962), appl. dism. 371 U.S. 14, 83 S.Ct. 44, 9 L.Ed.2d 49 (1962) (stating that by restricting payment of prizes to "holder[s] of winning tickets[,]" the legislature intended to exclude one who was a holder of a winning ticket or one who is entitled to be but is not presently a holder of a winning ticket); State v. Nebraska State Bd. of Agric., 217 Neb. 622, 350 N.W.2d 535 (1984) ("A pari-mutuel ticket is an instrument payable on demand when the demand is accompanied by presentation of the ticket."); Register v. Oaklawn Jockey Club, Inc., 306 Ark. 318, 811 S.W.2d 315 (1991); Oregon Racing Comm'n v. Multnomah Kennel Club, 242 Or. 572, 411 P.2d 63 (1966); Hochhalter v. Dakota Race Management, 524 N.W.2d 582 (N.D.1994).
The trial court found plaintiff's testimony credible and entered judgment in his favor based largely on the court's construction of N.J.A.C. 13:70-29.13(b). In so ruling the court attempted to make it appear that the holding applied only to this case, but it would not be so limited. Instead, the decision would substitute the court's own perceptions for those set forth in duly adopted administrative regulations, N.J.A.C. 13:70-29.13(c). It would also contravene the sound principles articulated in Karafa. We are thus persuaded that the trial court's ruling in this respect must be reversed.
We also conclude that N.J.A.C. 13:70-29.60 barred payment of the ticket more than six months after its purchase. That regulation reads in pertinent part, "[a]ll mutuel tickets and vouchers shall expire six months and one day from the date of issue[.]" This regulation implements N.J.S.A. 5:5-68.1, which deals with "amounts resulting from parimutuel tickets remaining unclaimed after six months *489 which are paid to the Racing Commission for deposit in the general fund ...," and N.J.S.A. 5:5-64, which directs that "[a]ll sums held by any permitholder for payment of outstanding parimutuel tickets not claimed by the person or persons entitled thereto within six months from the time such tickets are issued shall be paid upon the expiration of such six-month holding period as [specified by the statute]...."
Defendant contends that the trial court disregarded the clear language of the regulation by holding that plaintiff "made every attempt within the time frame of the six months to retrieve his winnings" and "was led to delay his pursuit of his claim so that the Racing Commission could determine in its investigation whether the missing ticket would be cashed by some other third party or presumable culprit." We conclude that this was an error of law and presents an independent basis for vacating the trial court's judgment. Equitable estoppel is only "rarely" employed against a governmental agency, O'Malley v. Dept. of Energy, 109 N.J. 309, 537 A.2d 647 (1987). There is no basis in this record for doing so here. In any event, the alleged representations on which plaintiff claims to have relied were not made by representatives of the Racing Commission but of the Meadowlands, and are not attributable to the Commission.
We do not take issue with the trial court's findings as to plaintiff's credibility, but unfortunately for plaintiff, even if we accept his version of the evidence, this does not translate into a legal basis for approving the errors of law embraced in the trial court's judgment. In light of our foregoing determinations, which fully dispose of the appeal, we need not rule upon the jurisdictional issue or the other errors said to have been committed by the trial court.
The judgment appealed from is reversed.
NOTES
[1] That the Racing Commission has procedures with respect to payment on stolen tickets is demonstrated by evidence plaintiff introduced, namely, correspondence from the Racing Commission in response to plaintiff's inquiries, which confirmed that the allegedly stolen "ticket is locked from being cashed" and that because "the ticket is not in your possession ... you have no claim to its proceeds...."