143 N.J. Super. 443 (1976)
363 A.2d 387
PATRICK McCABE AND MILDRED MC CABE, HIS WIFE, PLAINTIFFS,
v.
DIRECTOR OF NEW JERSEY LOTTERY COMMISSION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided August 4, 1976.
*444 Mr. Patrick F.X. Fitzpatrick, attorney for plaintiffs.
Mr. William F. Hyland, Attorney General of New Jersey, attorney for defendant (Mr. Barry D. Szaferman, Deputy Attorney General appearing.)
KIMMELMAN, J.S.C.
Application has been made to the court for the entry of an "appropriate judicial order" permitting Patrick McCabe, the winner of $100,000 in the New Jersey lottery, to assign his winnings to a finance company and for an order directing the Lottery Commission to recognize and honor the assignment. The State Lottery Law, N.J.S.A. 5:9-1 et seq., prohibits assignments of prizes except to the estate of a deceased prize winner and except pursuant to "an appropriate judicial order." N.J.S.A. 5:9-13. The legislation neither establishes nor defines the factors to be considered by a court in its consideration of the entry of "an appropriate judicial order." That deficiency gives rise to this litigation.
In 1973 plaintiff Patrick McCabe won $100,000 in the New Jersey lottery, to be paid to him at the rate of $10,000 a year for 10 years. To date four payments have been made, leaving a balance of $60,000 due McCabe from the Lottery Commission. Sometime in 1975 plaintiff Mildred McCabe, with her husband Patrick's consent, ventured into the restaurant business. In order to raise the capital required for this endeavor plaintiffs placed a second and third mortgage on their home and also found it necessary to borrow money from family and friends. The average interest rate on these obligations is claimed to be exorbitant. In order to *445 alleviate the mounting financial hardship, plaintiffs have attempted to secure another loan which would enable them to pay off their outstanding debts and to reduce the level of the interest charged. The McCabes have been successful in negotiating a loan application with Liberty Trading Co., a mortgage lending company authorized to do business in New Jersey, for a debt consolidation loan of $50,000 with interest at the rate of 10% a year. Under the terms of the proposed arrangement, on each May 16, the lottery prize payment date, the lender would receive the $10,000 prize payment in reduction of principal and interest until the loan is satisfied. The making of this loan is conditioned by the lender's requirement that plaintiff McCabe assign the lottery winnings to it as collateral.
In the absence of an appropriate court order, the Lottery Commission has indicated its refusal to recognize the assignment by McCabe to Liberty Trading Co. when and if made. Consequently, a complaint in this matter was filed seeking an appropriate court order sanctioning the assignment. The issue presented is one of first impression.
At the general election held in November 1969 the voters of New Jersey did approve an amendment to the Constitution by way of exception to the general prohibition against gambling of any kind by authorizing the Legislature to provide for a State lottery. N.J. Const. (1947), Art. IV, § 7, par. 2(C). Thereafter, the Legislature acted pursuant to the authorization. On February 16, 1970 the State Lottery Law became effective and, as above noted, § 13 provided:
No right of any person to a prize drawn shall be assignable, except that payment of any prize drawn may be paid to the estate of a deceased prize winner, and except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled. The director shall be discharged of all further liability upon payment of a prize pursuant to this section.
Undoubtedly, § 13 vests authority in the courts, given suitable or appropriate circumstances, to supersede the general prohibition against assignments and to direct the payment *446 of a winner's prize to someone else. Nevertheless, while the ultimate authority of this court under § 13 is not doubted the scope of its discretion under the circumstances here presented remains unclarified.
In the construction and application of § 13 the directive of Chief Justice Vanderbilt in Watt v. Franklin Mayor and Council, 21 N.J. 274 (1956) is apt:
In every case involving the application of a statute, it is the function of the court to ascertain the intention of the Legislature from the plain meaning of the statute and to apply it to the facts as it finds them. Carley v. Liberty Hat Mfg. Co., 81 N.J.L. 502, 507 (E. & A. 1910). A clear and unambiguous statute is not open to construction or interpretation, and to do so in a case where not required is to do violence to the doctrine of the separation of powers. Such a statute is clear in its meaning and no one need look beyond the literal dictates of the words and phrases used for the true intent and purpose in its creation. But few statutes can boast of such clarity or stand that test through every inquiry, and the court must take the responsibility of determining in each case presented whether the particular statute, in its application to it, is clear and unambiguous.
The need for construction arises in two instances. As we move away from the ideal of a clear and unambiguous statute we find statutes that on their face are clear and unequivocal but in light of related legislation and of the surrounding facts and circumstances of the case in which it is applicable, the true meaning becomes indefinite or obscure. * * * Then, too, there are those less difficult instances in which the meaning of a statute is obviously obscure or doubtful, where the language used is per se capable of dual interpretation. When these circumstances appear the court is not only at liberty to interpret the statute but it is its solemn duty to seek out and give effect to the legislative intent evident from the aids available to it; cf. Murphy v. Zink, 136 N.J.L. 235 (Sup. Ct. 1947), aff'd. 136 N.J.L. 635 (E. & A. 1947); Kessler v. Zink, 136 N.J.L. 479 (E. & A. 1947); Kelly v. Kearins, 132 N.J.L. 308 (Sup. Ct. 1944). [at 277]
A review of the pertinent legislative history furnishes little or no clue as to the legislative intent behind § 13, nor is there any judicial precedent in New Jersey or elsewhere as a guide to its application. See Karafa v. N.J. State Lottery Comm'n, 129 N.J. Super. 499 (Ch. Div. 1974).
*447 Lotteries, as a form of legalized gambling undertaken to support a worthy or deserving cause, were commonplace in the early days of this State.
* * * [L]otteries were used as a means of raising funds for the College of New Jersey, now Princeton University, and tickets were freely offered for sale and advertised in the public press * * * The trustees of the Presbyterian churches at Elizabethtown, New Brunswick, Princeton, Newton, Bridgeton and Middletown after the Revolution were authorized to conduct lotteries in order to raise money to build edifices. The Episcopal church was not slow in securing like privileges * * * and by this means the inhabitants of Newark furnished their academy. By 1797, the lottery scheme must have been too much of a good thing because the legislature passed an act declaring a lottery a common nuisance, and those participating punishable therefor. Dombrowski v. State, 111 N.J.L. 546, 547-8 (Sup. Ct. 1933).
One hundred years later, in 1897, the legislative prohibition against lotteries and gambling of any kind was firmly ingrained by way of amendment to the Constitution of 1844. "The purpose of the amendment was to forever bar gambling from the state." Dombrowski v. State, supra at 547.
Upon the adoption of the Constitution of 1947 the general prohibition against gambling was continued although worded to allow legislative sanction, provided the specific kind had first been submitted to the people and approved by a majority vote at a statewide general referendum. Art. IV, § 7, par. 2. The latter proviso was somewhat superfluous since the people always had the inherent right to amend the Constitution. See 16 Am. Jur.2d, Constitutional Law, § 26 at 197, and cases therein collected.
This capsulated historical overview evidences the lottery to be but a recent exception to the long-standing public policy in this State against gambling.
Legislation enacted pursuant to a specific exception to the general prevailing rule should be strictly construed and not extended beyond that which its wording will reasonably bear. Palkoski v. Garcia, 19 N.J. 175, 181 (1955). In the construction of § 13 and what was meant by the words "an *448 appropriate judicial order" we are confronted with an exception to an exception; i.e., a request for a court-ordered sanction of an assignment of winnings which would run counter to the general statutory prohibition against assignments, all within the framework of a statute which itself is an exception to the State's general public policy against gambling. Consequently, a court order sanctioning an assignment of winnings must be circumscribed not only by circumstances of absolute necessity but must not undermine the legislative intent inherent in the State Lottery Law.
This court perceives at least three reasons why New Jersey and other states opt for the payment to the top lottery winners of their substantial prize money in installments over a number of years:[1]
1. The State has the use of the prize money without the obligation to pay interest for a considerable period of time;
2. The very substantial tax liability to the winner on large prizes is minimized; and
3. The lottery winner, whether or not he needs the parens patriae protection of the State, is legislatively insulated from his own human frailties and the possible excesses to which he would otherwise be subjected by suddenly coming into possession of an enormous amount of cash.
To allow a lottery winner to anticipate, by assignment to a finance company or otherwise, all or a portion of his prize money which is payable by legislative design over a period of years, either for the purpose of consolidating his loan obligations incurred for business reasons or for the purpose of the immediate creation of a pool of money not otherwise available to him, would invite a Pandora's box of avowed worthy causes and thus, contravene an unexpressed but readily apparent intent behind the law.
For the foregoing reasons, the motion to dismiss plaintiffs' complaint is granted.
NOTES
[1] See Report of the New Jersey State Lottery Planning Commission, 23 (February 9, 1970).