[STATE, EX REL.] MEYERS, *v.* OHIO STATE LOTTERY COMMISSION.

(No. L-86-143—Decided December 12, 1986.)

*Martin J. Holmes,* for relator.
*Anthony J. Celebrezze, Jr.,* attorney general, and *Elizabeth A. Tarpy,* for respondent.

CONNORS, P.J. This case is an original action instituted in this court pursuant to the Constitution of the state of Ohio, Section 3(B)(1), Article IV. This court finds that it has jurisdiction of the matter. The requisites required before a court of original jurisdiction may issue a writ of mandamus are set forth in *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus. We find these requisites to be present herein.

Relator, William D. Meyers, seeks an order from this court directing the respondent to pay him the lottery money he won for the year 1986 in the amount of $80,438.88. The respondent refuses to pay relator the 1986 installment of the lottery award, and if this complaint is denied, intends to disburse nearly all of the 1986 installment to what respondent urges are judgment creditors who have valid judgments and have filed notices of attachments with the respondent.

Relator has not appealed these judgments as respondent argues he must do before a writ of mandamus may issue. Thus, respondent argues that relator has an adequate remedy at law. We assume that relator's position is that he did not appeal the judgments, and the record does not reflect that he perfected any appeals from the four judgments involved, simply because he does, in fact, owe the judgment creditors.

There is really no dispute as to the factual matters before the court. Both

parties are in agreement that relator did win the Ohio lottery drawing of April 7, 1984, in the amount of $2,010,972. Relator received a letter of congratulations from the Director of the State Lottery Commission, which further stated that a check for $80,434.88 was enclosed and represented the first installment relator would receive for each year beginning 1984 and ending with the year 2003. (Copy of said letter is attached hereto and marked Appendix I.[1]) Relator also received his 1985 installment. When the date for the payment of his 1986 installment came, upon advice of its counsel, the Attorney General of Ohio, the respondent notified relator that his installment would not be forthcoming, but rather the proceeds would be disbursed to judgment creditors who had put the respondent on notice. (Appendix II, copy attached.[2])

It was in this posture that relator filed his complaint in mandamus with this court on April 29, 1986, and oral arguments were heard on June 10, 1986. Counsel for both parties were requested to submit post-argument briefs in support of their positions and have timely obliged the court.

The issue to be decided is whether prize winnings from the State Lottery Commission must be paid directly to the winners (who number hundreds every week) or are subject to be paid by the State Lottery Commission to judgment creditors of the holders of winning tickets. The answer to the issue (which as best as we can determine is one of first impression in this state and to which we can find no published opinion directly on point deciding the question in any sister state) must be found in this court's interpretation of the Ohio Constitution, R.C. 3770.07, and Ohio Adm. Code 3770:1-8-04.

[1] *Infra* at 238.

[2] *Infra* at 239-240.

Ohio Adm. Code 3770:1-8-04 provides as follows:

"(A) Payment to be made to claimant.

"Prizes shall be claimed in the name of the holder of the ticket. After validation, payment of prize awards shall be made promptly to the person in whose name the claim is made.

"(B) Method of payment.

"(1) As permitted by applicable law, the director may order that prizes up to and including five hundred ninety-nine dollars will be paid by agents out of the proceeds of their ticket sales. All other prizes will be paid by official check or warrant.

"(2) The director may adopt an order that any prize greater than ten thousand dollars shall be paid in annual installments, provided that each installment be at least five thousand dollars.

"(C) Payment of lotto jackpot.

"The jackpot in the lotto game, rule 3770:1-7-33 of the Administrative Code, shall be awarded in accordance with the following payment schedules. When there is more than one winning ticket for any jackpot, each winning ticket shall entitle its holder to receive a pro rata share of the jackpot in accordance with said schedules.

"(1) When the prize per share is one hundred thousand dollars or less, the prize shall be paid in a lump sum.

"(2) When the prize per share is at least one hundred thousand dollars and one cent but not more than two hundred fifty thousand dollars, the prize shall be paid in five equal annual installments.

"(3) When the prize per share is greater than two hundred fifty thousand dollars, the prize shall be paid in annual installments of either fifty thousand dollars or five per cent of the jackpot, whichever is greater."

Relator's third argument (taken out of sequence) relates to this section of the Ohio Administrative Code. This

section is of some help to us only in that it provides in paragraph (A) that: "[P]rizes shall be claimed in the name of the holder of the ticket. After validation, payment of prize awards *shall be made promptly to the person in whose name the claim is made.*" (Emphasis added.)

An Ohio Administrative Code section is a further arm, extension, or explanation of statutory intent implementing a statute passed by the General Assembly. It has the force and effect of a statute itself. Nowhere in the above-cited section of the Ohio Administrative Code do we find that the State Lottery Commission is authorized to disburse prize money to anyone other than the person in whose name the claim is made.

In the case *sub judice,* the claim was made by the relator in 1984. It was honored in 1984, and again the yearly installment was honored in 1985. In 1986, it was dishonored. The State Lottery Commission has validated the claim of relator and has told him he will receive an equal installment each and every year until the year 2003. (See Appendix I.[3]) We find that the lottery commission is duty-bound to follow this administrative law, especially when, in all probability, it suggested the adoption thereof.

Relator, in his first argument, claims that lottery prize winnings are not subject to garnishment. He argues eloquently, and at length, that the state may not be sued, absent its consent. We agree. An agent of the state is being sued as a stakeholder, not as a debtor. However, it is a general rule of law that the state may only be sued in accordance with legislation which clearly expresses the state's consent to be sued. A general waiver of sovereign immunity from liability such as that contained in R.C. 2743.02 does not sub-

ject the state to a garnishment proceeding. In the case *sub judice,* the agency of the state, the State Lottery Commission, is being sued to collect private debts in the form of judgments. For an analogous fact situation, see *Chewning* v. *District of Columbia* (C.A.D.C. 1941), 119 F. 2d 459. Further, in *Palumbo* v. *Indus. Comm.* (1942), 140 Ohio St. 54, 23 O.O. 259, 42 N.E. 2d 766, overruled on other grounds in *Schenkolewski* v. *Metroparks System* (1981), 67 Ohio St. 2d 31, 21 O.O. 3d 19, 426 N.E. 2d 784, the Ohio Supreme Court held that the state was not subject to garnishment without its express consent. See, also, 6 American Jurisprudence 2d (1963) 615, Attachment and Garnishment, Section 78. Since Ohio has not enacted a statute that specifically subjects the state of Ohio to a garnishment proceeding of lottery winnings, we find that relator's argument is persuasive and that such an action may not be brought against the state or an agency thereof.

A statute must specifically state that the state of Ohio is subject to a garnishment proceeding and we find no authority which would imply that lottery prize winnings are subject to garnishment. Furthermore, we hold that Ohio Adm. Code 3770:1-8-04 imposes a duty to pay the prize-award winner. R.C. 124.10 (formerly R.C. 115.46) authorizes a creditor or a judgment creditor to maintain a garnishment action against the state only when: (a) the debtor is an employee or an official of the state; (b) the property sought to be sequestered is salary, wages, or other compensation earned by such employee or official (clearly not the case herein); and (c) the order and notice of attachment, garnishment, or proceeding in aid of execution sets forth the name of the state agency in which the state employee or official is employed. See 1959 Ohio Atty. Gen. Ops. No. 923. There is no question

---

[3] *Infra* at 238.

herein but that relator is not an employee of the state and his creditors are not attempting to garnish his wages. In the present fact situation, R.C. 124.10 does not subject the state to garnishment proceedings. The record reflects that much of the same argument was used by counsel for the respondent in arguing successfully in relator's suit against respondent, *Capp* v. *Meyers* (Mar. 1986), Ct. of Claims No. 86-02694, unreported. The Court of Claims held that it had no jurisdiction as the state had not consented to be sued in this instance. Certainly, the relator is entitled to a forum. Counsel for respondent in that case involving a judgment creditor of relator argued successfully to have the claim dismissed in the Court of Claims and asserted the same argument in its position. Shortly thereafter counsel for the respondent changed its position to an opposite one in advising the respondent to disburse the lottery winnings of relator to various judgment creditors by way of a letter dated May 19, 1986. (See Appendix II.[4])

Relator also advances the argument that R.C. 3770.07 does not authorize the respondent to pay a prize award to a judgment creditor. The statute clearly does not mention that the state of Ohio (or its agent, the respondent) is subject to garnishment proceedings for money it holds for payment of lottery winners. R.C. 3770.07 provided in part (see 137 Ohio Laws, Part II, 2570, 2574-2575) as follows:

"Lottery prize awards shall be claimed by the holder of the winning lottery ticket, or by the executor or administrator of the estate of a deceased holder of a winning ticket, in a manner to be determined by the state lottery commission, within one year of the date on which such prize award was announced. If no valid claim to the

___
[4] *Infra* at 239-240.

prize award is made within the prescribed period, the prize money or the cost of goods or services awarded as prizes, or if such goods or services are resold by the commission, the proceeds from such sale, shall be returned to the state lottery fund and distributed in accordance with section 3770.06 of the Revised Code.

"If a person entitled to a prize award is under eighteen years of age, or is under some other legal disability, and the prize money or the cost of goods or services awarded as a prize exceeds one thousand dollars, the director shall order that payment be made to the order of the legal guardian of such winning ticket holder. If the amount of the prize money or the cost of goods or services awarded as a prize is one thousand dollars or less, the director may order that payment be made to the order of the adult member, if any, of such winning ticket holder's family legally responsible for the care of such winning person.

"No right of any person to a prize award shall be assignable except that payment of any prize award may be made to the executor or administrator of the estate of a winning ticket holder, and any person may be awarded a prize award to which another is entitled pursuant to the order of a court of competent jurisdiction."

Respondent's argument is that the last phrase contained in the last paragraph of R.C. 3770.07 quoted above, *"and any person may be awarded a prize award to which another is entitled pursuant to the order of a court of competent jurisdiction"* (emphasis added) is, at best, ambiguous. The interpretation and application of this phrase is the crux of this case. Both parties agree that this is so. Relator argues that the intent of the legislature in adopting this language was to provide a forum wherein two (or more) persons who claim an interest in a winning lottery ticket can have their rights

adjudicated and the language was not intended to provide a collection source for any and all who may have a money claim against a winning ticket holder. We think this is a reasonable interpretation of the legislative language. If not, the legislature can clarify the language to provide in clear and convincing language that the proceeds can be attached by a judgment creditor. In enacting the statute, the legislature made clear that the winnings are not subject to *assignment*. In all probability, the legislature did not envision the problem created herein.

As noted in *McCabe* v. *Director of New Jersey Lottery Comm.* (1976), 143 N.J. Super. 443, 363 A. 2d 387, "[l]egislation enacted pursuant to a specific exception to the general prevailing rule should be strictly construed and not extended beyond that which its wording will reasonably bear. * * *" *Id.* at 447, 363 A. 2d at 389. That case further held that despite the fact that the lottery statute did not establish or define factors to be considered by a court in its consideration of whether to grant "an appropriate judicial order" that would allow assignment of prize money (even though requested by the prize winner), in view of reasons why the legislature decided to pay money in installments over a number of years rather than in a lump sum, including consideration of protecting a prize winner from his own human frailties and possible excesses, the court would not allow assignment of $100,000 prize money to a financial company for purpose of consolidating the winner's loan obligations for business reasons. *Id.* at headnote 2. That court was faced with the task of interpreting a New Jersey statute, Section 5: 9-13, Title 5, New Jersey Statutes. Application had been made to the court for the entry of an "appropriate judicial order" permitting plaintiffs McCabe, the winner of $100,000 in the New Jersey lottery, to assign his winnings to a finance company and for an order directing the New Jersey Lottery Commission to recognize and honor the assignment. As does Ohio's lottery law, New Jersey's lottery law prohibits assignments of prizes except to the estate of a deceased prize winner and except pursuant to *an appropriate judicial order*. We recognize an analogy between this New Jersey statutory language and the Ohio statutory language in R.C. 3770.07, "*and any person may be awarded a prize award to which another is entitled pursuant to the order of a court of competent jurisdiction.*" (Emphasis added.) The New Jersey court further went on to state that "[t]he legislation neither establishes nor defines the factors to be considered by a court in its consideration of the entry of 'an appropriate judicial order.' * * *" *Id.* at 444, 363 A. 2d at 387. Inasmuch as the statutory language in both the Ohio statute and the New Jersey statute are strikingly similar, we consider that the deficiency gives rise to this litigation. We invite any reviewing court to consider the analogy between the Ohio statute and the law of New Jersey.

We agree with the respondent lottery commission that at no time has the legislature *specifically* taken steps to insulate lottery prize winnings from judgment creditors through either R.C. 2329.66 or 2716.11. Conversely, the legislature has not *specifically* provided that these winnings may be attached. In view of the fact that the legislature has seen fit to provide that the prize winnings may not be *assigned* (even voluntarily by a winner), a form of protection for the fortunate winners, the argument that the winnings may not be (forcibly) *attached* attains greater weight and credibility.

We are of the opinion that the legislature did not envision the facts giving rise to this case and, through an oversight, did not provide for attachment or nonattachment of lottery prize

winnings. We are also of the opinion that the legislature should be given the opportunity to express its will on the question.

From a practical standpoint we must consider several factors. If we were to hold that herein a writ should be denied, then, in all fairness, the lottery commission, which spends millions of dollars in advertising in every shape and form from television, to radio, to signs on busses, to talking machines in grocery stores encouraging people to drop a dollar or two into the machine, select numbers, and be issued a ticket on any number of gimmick games, should include a warning that if a player is a lucky winner then his winnings will be subject to *attachment* and he will not be able to *assign* them. It is quite conceivable that those who play the lottery are those who are already in debt and are simply hoping to get "hit by lightning" and win the pot of gold and get out of debt. Practical experience teaches us something else — they simply go deeper into debt! If prospective purchasers are made aware that their winnings will be subject to attachment, in all probability sales of lottery tickets will fall off, thus defeating the legislative and constitutional intent of raising money to provide for better education in Ohio.

Another factor to be considered is the endless litigation which will result if we hold that prize winnings are subject to *attachment,* rather than if we require that the lottery commission pay prizes, as indicated by Ohio Adm. Code 3770:1-8-04 and R.C. 3770.07, directly to a prize winner, who, once he or she has the prize in his or her possession, is immediately subject to garnishment proceedings pursuant to R.C. 2716.11 and 2743.02, and any other remedies a judgment creditor may lawfully have.

Winning lottery tickets of over a million dollars are drawn each week,

and thousands of smaller winning tickets are also drawn. In the event that our determination is not correct, judgment creditors will seek to be paid by the lottery commission directly rather than have the proceeds paid directly to the holders of the winning tickets, as we perceive the statute and Ohio Administrative Code provide. We can conceive of multiple claims against a winning ticket and its holder; of motions to intervene (as a judgment creditor — which we have in this case); of the necessity of determining the priority of the judgment liens; of the validity of the underlying judgment (in this case, relator claims one of the judgments was obtained by fraud); *ad infinitum.* Counsel for respondent, the Attorney General of Ohio, will be deluged with claims and the dockets of trial courts will pay the price of endless litigation. Public policy compels the respondent to disburse the prize winnings to the prize winners.

We are of the opinion that, based upon our interpretation of R.C. 3770.07, Ohio Adm. Code 3770:1-8-04, and the practicalities of not granting relator's prayer, a writ should be issued by this court. The judgment creditors have their statutory rights to proceed against the relator once the respondent has followed its obligation to pay to the relator his winnings as provided by statute and the Ohio Administrative Code.

The writ of mandamus prayed for is hereby granted, this opinion shall serve as the writ as herein allowed and it is ordered to be served upon the parties pursuant to R.C. 2731.08. Costs to respondent.

*Writ allowed.*

WILKOWSKI, J., concurs.

HANDWORK, J., concurs in judgment only.

238

**Ohio State Lottery Commission**

Richard F. Celeste
Governor

**Thomas V. Chema**
Executive Director

William L. Korte
Commission Chairman

Executive Offices:

The Frank J. Lausche State Office Building
615 Superior Avenue, West
Cleveland, Ohio 44113
Telephone: (216) 822 - 3200

31 North Grant Street
Columbus, Ohio 43215
Telephone: (614) 466 - 7676

April 26, 1984

Mr. William D. Meyers
2150 Brothan Drive
Toledo, Ohio   43614

Dear Mr. Meyers:

Congratulations on being an Ohio Lotto winner!  The total
amount of the jackpot winnings for the drawing of April 7, 1984
was $2,010,972.00.  Enclosed is a check in the amount of
$80,438.88, which represents the first installment you will
receive for each year beginning 1984 and ending with year 2003.

We are required by law to withhold twenty percent (20%) of each
installment payment for Federal tax purposes.  As you can see
by the following information, a total amount of. $20,109.72 was
deducted from your first gross installment.

| GROSS INSTALLMENT | TAX | NET INSTALLMENT |
|---|---|---|
| $100,548.60 | $20,109.72 | $80,438.88 |

We greatly appreciate your interest and participation in the
Ohio Lottery and extend our best wishes for your continued
success.  As you know, profits from the Ohio Lottery are now
earmarked to support education in Ohio.

Best of luck to you, and please feel free to contact us if we
can be of any assistance.

Sincerely,

Thomas V. Chema
Executive Director

TVC:crd

Enclosure (1)

**Attorney General**
**Anthony J. Celebrezze, Jr.**

May 19, 1986

Patrick Collins, Esq.
Ohio Lottery Commission
615 West Superior
Cleveland, Ohio  44113

Re:  BancOhio National Bank v. William D. Meyers,
     Case No. 85-1877, Court of Common Pleas, Lucas Co.

     Robert F. Heil v. William D. Meyers,
     Case No. 85-CIV-226, Court of Common Pleas,
     Allen County

     Robert G. and Carolyn B. Kapp v. William D. Meyers,
     Case No. CI-81-1890, Court of Common Pleas, Lucas Cty.

     Ann M. Young v. William D. Meyers,
     Case No. DR-77795, Court of Common Pleas, Lucas Cty.

Dear Mr. Collins:

Pursuant to our telephone conversation of May 12, 1986, I am hereby instructing the Ohio Lottery Commission to issue full payment to satisfy the garnishment orders and/or orders of court for payment in the above-captioned cases against William D. Meyers, lottery prize winner, pursuant to Ohio Revised Code Section 3770.07.

Ohio Revised Code Section 3770.07 reads, in pertinent part, that . . .

> any person may be awarded a prize award to which another is entitled pursuant to the order of a court of competent jurisdiction.

Upon reviewing all of the documents in the above-captioned cases, it is my opinion that the said orders are valid orders of a court of competent jurisdiction:  BancOhio has submitted an Order for judgment against Mr. Meyers from the Lucas County Court of Common Pleas, dated December 18, 1985, for a total of $27,307.34; Robert F. Heil has submitted a garnishment Order against Mr. Meyers, dated January 28, 1986, for a total of $32,821.62; Mr. Robert G. and Mrs. Carolyn B. Kapp have submitted a garnishment Order against Mr. Meyers dated April 8, 1986, for a total of $24,153.20; and an agreed Entry and Order

EXHIBIT B

Patrick Collins
May 19, 1986
Page 2

in Young v. Meyers dated October 1, 1985, was submitted to the Commission for a total of $3,900.00.

The Commission is to issue a check to satisfy each of these four (4) orders along witha check for the balance of money owing to Mr. Meyers, out of the April 10, 1986 installment of prize money, totaling $80,438.88 no later than June 13, 1986, unless otherwise ordered or enjoined by court order to withhold any payments.

I am aware that there is another action filed against Mr. Meyers, Yoder v. Meyers, Case No. CVF-85-10419, Toledo Municipal Court. I have reviewed all of the documentation pertaining to this complaint and do not find any order of garnishment or other order from any court of record of this state authorizing the Lottery Commission or ordering the Lottery Commission to withhold any sums of money on Yoder's behalf. Therefore, until such an Order is forthcoming, do not issue any monies to Thomas A. Yoder on his complaint

If you have any questions, please feel free to contact me at 614/466-2980.

Very truly yours,

ANTHONY J. CELEBREZZE, JR.
Attorney General

ELIZABETH A. TARPY
Assistant Attorney General

EAT:jw

cc: Joseph D. Shibley, Esq.
Shibley Co., L.P.A.
National Bank Building
Toledo, Ohio 43604

Attorney for BancOhio