714 A.2d 322 (1998)
314 N.J. Super. 116
In re the Petition of SINGER ASSET FINANCE COMPANY, L.L.C., for an Order Allowing a Turnover of Barreca Lottery Winnings pursuant to N.J.S.A. 5:9-13.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 1998.
Decided May 14, 1998.
Clifford T. Rones, Deputy Attorney General, for appellant New Jersey Division of State Lottery (Peter Verniero, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Brian J. Litten, Deputy Attorney General and Mr. Rones, on the brief).
Moira E. O'Connell, Morristown, for respondent, Singer Asset Finance Company (Catalano and O'Connell, attorneys; Ms. O'Connell, of counsel and on the brief; Margaret F. Catalano, also on the brief).
Before Judges LANDAU, COLLESTER and BILDER.
The opinion of the court was delivered by BILDER, J.A.D. (retired and temporarily assigned on recall).
This case involves the voluntary assignability of state lottery winnings. The sole issue *323 is whether N.J.S.A. 5:9-13, a section of the State Lottery Law, N.J.S.A. 5:9-1 to 5:9-25, permits such assignments.
N.J.S.A. 5:9-13 provides:
No right of any person to a prize drawn shall be assignable, except that payment of any prize drawn may be paid to the estate of a deceased prized winner, and except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled. The director shall be discharged of all further liability upon payment of a prize pursuant to this section.
On June 18, 1987 Caroline Barreca won a share in a prize of over two million dollars in the New Jersey Lottery. As such she became entitled to receive $63,500 each June for twenty years, i.e., until June 22, 2006. On November 7, 1996 Ms. Barreca entered into an agreement with petitioner Singer Asset Finance Company, L.L.C. in which she agreed to assign to Singer $50,000 of the payments due June 22, 1999 and June 22, 2000 in return for a present payment to her of $72,000. The agreement was conditioned upon the entry of a court order "directing the State Lottery to recognize [the agreement] and to make the Assigned Payments, without reduction or set off (other than income tax withholding), directly to [Singer]" and a "written acknowledgement from the State Lottery * * * confirming that [Ms. Barreca] is the winner of [the assigned prize] and acknowledging the State Lottery's unqualified agreement to make all of the Assigned Payments to [Singer]."
Singer filed a petition in the Law Division in which it sought to proceed summarily for an order to allow the turnover of the assigned portion of Ms. Barreca's prize, an order which it characterized as an "appropriate judicial order" permitted by N.J.S.A. 5:9-13. Over the opposition of the Division of State Lottery, on February 14, 1997 the Law Division entered an order stated to be "entered pursuant to N.J.S.A. 5:9-13," requiring that Singer's assignee[1] be paid the assigned portion of the payments due to Ms. Barreca, ordering that taxes be withheld and credited to Singer's assignee, and requiring the Division of State Lottery to acknowledge in writing that it will unconditionally pay the lottery prize payments in accordance with the order. The Division appeals.

I.
The issue is strictly a question of statutory construction. In the only published opinion concerning this issue, McCabe v. Director N.J. Lottery Commission, 143 N.J.Super. 443, 363 A.2d 387 (Ch.Div.1976), Judge Kimmelman examined N.J.S.A. 5:9-13 and noted that, as an exception to the statutory general rule making the prizes unassignable, the phrase "appropriate judicial order" must be strictly construed so as not to run counter to the general statutory prohibition against assignments. Id. at 447-448, 363 A.2d 387. Reading the phrase in context with the other exception, the death of the prize winner, he concluded that a court order sanctioning an assignment of winnings was limited to circumstances of necessity. Id. at 448, 363 A.2d 387. We agree.
Absent a clear indication to the contrary, language in a statute is to be read in accordance with its plain and ordinary meaning. Service Armament Co. v. Hyland, 70 N.J. 550, 556, 362 A.2d 13 (1976). Our duty is to construe and apply the statute as enacted. We are not at liberty to presume the legislature intended something other than what it expressed by its plain language. This Court will not engage in conjecture or surmise which will circumvent the plain meaning of the act. Gangemi v. Berry, 25 N.J. 1, 10, 134 A.2d 1 (1957). If a litigant is dissatisfied with the manner in which the Legislature has spoken, its recourse lies with that branch, not with this court. In re Jamesburg High School Closing, 83 N.J. 540, 548, 416 A.2d 896 (1980). This is particularly true where, as here, there is no helpful legislative history. See Marotta v. Burgio, 185 N.J.Super. 172, 175-176, 447 A.2d 937 (Law Div.1982).
As Judge Kimmelman correctly noted the disputed language must be read in the context of the whole phrase *324 No right * * * shall be assignable, except that payment * * * may be paid to the estate of a deceased prize winner, and except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled
and not extended beyond its reasonable bounds. He was applying a well established principle of construction which instructs that general words following specific words are to be construed to be limited by the preceding general wordsejusdem generis. See Denbo v. Moorestown Twp., 23 N.J. 476, 481-482, 129 A.2d 710 (1957). Exceptions in a legislative enactment are to be strictly construed in a manner consistent with the purpose of the law. Service Armament Co. v. Hyland, supra, 70 N.J. at 558-559, 362 A.2d 13.
The Legislature has ordained that the prize rights shall not be assignable and has thereafter carved out exceptions. Read together it can be seen that the two exceptions relate to a common problemextrinsic events necessitating a transfer of the right to receive the moneys. The first exception deals with the death of the recipient. The second exception, read in pari materia, relates to other extrinsic events creating legal necessity, e.g., spousal or child support, equitable distribution. To read the second exception more broadly so as to encompass any reason, voluntary as well as involuntary, as long as there is a court order, as petitioner argues, would permit the exception to overrule the legislative prohibition against assignmentsan unreasonable result. See Beemer v. Solar Oil Co. Sussex, 96 N.J.Super. 50, 58, 232 A.2d 447 (App.Div.1967). Moreover, as the Pennsylvania Supreme Court noted in construing a similar statute, the provision for "an appropriate judicial order" furnishes no standard for the court to follow in acting upon a request for approval of a voluntary assignment. See Lotto Jackpot Won by Marianov, 533 Pa. 402, 406, 625 A.2d 637, 639-640 (1993)(construing similar language in the Pennsylvania Lottery Law). "The absence of a standard is an indication that the construction of the statute permitting a right of assignment with leave of the court is not what the General Assembly intended." Id., 533 Pa. at 406, 625 A.2d at 640.
Although novel to us, the construction of this statutory language is not a novel question. Section 9-13 of the New Jersey Lottery Law is not unique. The same or similar language is found in the laws relating to lotteries conducted by other states. As already noted, other courts have construed the same language to bar voluntary assignments such as petitioner proposes. Singer Friedlander v. State Lottery, 423 Mass. 562, 670 N.E.2d 144 (1996); Lotto Jackpot Won by Marianov, supra; R & P Capital Resources v. State Lottery, 31 Cal.App.4th 1033, 37 Cal.Rptr.2d 436 (1995); Walker v. Rogers, 272 Ill.App.3d 86, 208 Ill.Dec. 815, 650 N.E.2d 272 (1995); Converse v. Lottery Com'n, 56 Wash.App. 431, 783 P.2d 1116 (1989); see also In re La. Lottery Grand Prize Drawing, 643 So.2d 843 (La.Ct.App. 1994); Meyers v. State Lottery Com'n, 34 Ohio App.3d 232, 517 N.E.2d 1029 (1986)[2]; contra Watson v. Lottery Bureau, 224 Mich.App. 639, 569 N.W.2d 878 (1997); but see B P 7 v. Michigan Bureau of State Lottery, 225 Mich.App. 811, 572 N.W.2d 663 (1997)(criticizing Watson).
The rationale for the interpretation which is here espoused finds reflection in the decisions of these other courts.
[The statute's] general prohibition against assignments is clear and unambiguous. It is the exception permitting assignments "pursuant to an appropriate judicial order" which is arguably ambiguous. However, exceptions to the general rule, especially when the general rule is unambiguous, should be strictly construed with any doubts resolved in favor of the general provision, rather than the exception. [Converse, supra, 56 Wash.App. at 434, 783 P.2d at 1118]
The plain language of [the section] that "[n]o right of any person to a prize shall be *325 assignable" provides a general prohibition against assignments. [The assignor's] proposed construction would transform the phrase "appropriate judicial order" to mean with leave of the court. This interpretation would effectively rewrite [the section] to have the exception swallow the general prohibition. [Marianov, supra, 533 Pa. at 406, 625 A.2d at 639]
[A] plain reading of [the section] indicates that the voluntary assignment of winnings is prohibited. Clause one * * *, in clear broad language, absolutely prohibits a lottery winner form assigning his prize winnings. Clause two begins with the language, "Notwithstanding any other provisions of the Section", which does indicate that clause two is an exception to clause one, but as other courts have noted, it is unusual for an exception to completely negate the rule. Clause two states that "any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled." * * * Because clause two is an exception to the general rule prohibiting assignments, it must be narrowly construed. We interpret clause two as applying to judicial orders entered in separate proceeding where disposition of a lottery prize is an appropriate remedy, such as an order directing payment of prize winnings to a former spouse as part of an equitable distribution or spousal support in a marital dissolution case, for a child support arrearage, or a garnishment order allowing a debtor to satisfy a judgment from a debtor-lottery winner. (citations omitted) [Walker, supra, 272 Ill.App.3d at 92-93, 208 Ill.Dec. at 819, 650 N.E.2d at 276]
If the `appropriate judicial order' exception were to freely permit voluntary assignments for any reason with leave of the court, the exception would entirely swallow the general rule that `[n]o right of any person to a prize shall be assignable.' Such a construction is contrary to the principle that statutory exceptions should be construed narrowly....
* * * * * *
Finally, plaintiff's interpretation is weakened by the fact that the statute provides absolutely no standards by which the Court could determine when it would be `appropriate' for it to grant a judicial order allowing a voluntary prize assignment. A construction of [the section] which would grant the Court broad authority to allow or disallow assignments without any standards for making such decisions is not a reasonable construction and is therefore to be avoided. [Singer Friedlander, supra, 423 Mass. at 565-566, 670 N.E.2d at 146 (citations omitted) ]
In addition to its contention that the plain language of N.J.S.A. 5:9-13 forbids voluntary assignments, the Division has pointed out that the prohibition serves an important public purpose by avoiding the administrative burden that would be created by the need to recognize assignments. Although our conclusion as to the plain meaning of N.J.S.A. 5:9-13 makes it unnecessary to seek unstated legislative purposes, particularly in the absence of any meaningful legislative history, it is useful to note that judicial recognition has already been given to the concept that a "clear legislative purpose [of the Lottery Law] was to keep the administrative machinery geared for the payment of winnings as simple and as efficient as possible." Karafa v. N.J. State Lottery Comm., 129 N.J.Super. 499, 504, 324 A.2d 97 (Ch.Div.1974).
As the Washington court noted in rejecting an assignability interpretation, "nothing would prevent a lottery winner from assigning his winnings to a number of parties, thereby burdening the Lottery with the administrative expense involved in parceling out the winner's annual payment to various assignees." Converse v. Lottery Com'n, supra, 56 Wash.App. at 434, 783 P.2d at 1118. Such fractionalization is present in the proposed assignment, which seeks to transfer the right to receive a portion of the winner's share for only two of the entitlement years. Moreover, an order such as that being appealed from can give rise to serious legal problems for the Lottery Division should a prize winner become in arrears of a child support order so that the assigned right to a *326 lottery prize becomes subject to the withholding provisions of N.J.S.A. 5:9-13.5.
Finally, the Division contends that the general assignability of prize winnings may, if sufficiently pervasive, create an established market for such future benefits and raise the specter of federal taxation of all lottery winnings based on the present value on the date the prize is won, a consequence the Division foresees as disastrous to the continuation of the lottery program. The record is inadequate for us to fully evaluate this contention but we recognize it as an issue within the competence of the Division and appropriate for its concern. Its view should be given considerable weight. See Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984).

II.
It is apparently undenied that the Law Division has entered a substantial number of orders, perhaps as many as 200, permitting assignments such as that made by Ms. Barreca, and that the Division, while opposing those applications, has until now not appealed. Singer contends that the entry of these orders without appeal has established its legal right to obtain such assignments. It seeks to apply the principle of offensive collateral estoppel to bar the Division from contending that N.J.S.A. 5:9-13 forbids voluntary assignments. We are satisfied this contention should be rejected substantially for the reasons given by the trial judge in a written opinion of May 21, 1997, incorporated by reference in his oral opinion of June 13, 1997.[3] As the trial judge correctly noted, the Division never acquiesced but consistently opposed the applications; the determinations permitting the assignments were inconsistent with the determination made in McCabe v. Director N.J. Lottery Commission, supra; and the issue is purely one of law which must be subject to reconsideration by an appellate court. See Kortenhaus v. Eli Lilly & Co., 228 N.J.Super. 162, 165-166, 549 A.2d 437 (App.Div.1988). Moreover, we are satisfied that even if the Division had failed to oppose the earlier applications, it could not have thereby nullified a legislative enactment by acquiescence in its violation. See Township of Fairfield v. Likanchuk's, 274 N.J.Super. 320, 331-332, 644 A.2d 120 (App.Div.1994).
It is important to note at this juncture that although the Division is not precluded by the prior orders from asserting its position that lottery winnings are non-assignable as to new applications, as to past orders its failure to appeal makes those orders final and enforceable by the assignee against the Division. This is analogous to the "intermediate situation" discussed by Justice (then Judge) Weintraub in Jantausch v. Borough of Verona, 41 N.J.Super. 89, 94-95, 124 A.2d 14 (Law Div.1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957).
Reversed.
NOTES
[1] Singer assigned its right to receive the moneys to an entity entitled Lottery Receivables Trust I.
[2] In passing on a lottery statute that did not contain an express prohibition on voluntary assignment, the Vermont Supreme Court noted that where a statute, like New Jersey's, bars such assignment, "[i]n each instance, the [numerous appellate courts interpreting the language have] adopted a narrow interpretation of the [appropriate judicial order] language." Lemieux v. Tri-State Lotto Com'n, 164 Vt. 110, 666 A.2d 1170, 1173 (1995).
[3] In an oral opinion of June 13, 1997, the trial judge incorporated by reference a more exhaustive written opinion of May 21, 1997, filed in a matter entitled "IN THE MATTER OF THE CONSOLIDATED PETITIONS FOR AN ORDER ALLOWING THE TURNOVER OF A PORTION OF THE LOTTERY WINNINGS OF VARIOUS LOTTERY WINNERS."